# WILLIAM WHITAKER

*v.*

# JAMES ROBINSON.

1. SPECIFIC PERFORMANCE—*what laches will defeat.* Where the vendee of land assigned his interest to A and B, who went into possession, and when the last payment fell due, the vendor prepared a deed, and sent it to have the same tendered to A and B, but was unable to make such tender, from the fact that they had left the country, and he thereupon went into possession, and sold the land to C, who made valuable improvements thereon; and D, who had acquired the interest of A and B, which fact he seems to have kept concealed, eight years after the last payment fell due, filed his bill for a specific performance of the contract, it appearing that he lived near the land all the time: *Held,* that his *laches* was such, unexplained, as to defeat his right to the equitable relief.

2. VENDOR AND VENDEE—*forfeiture—right to declare.* Where a contract for the sale of land contained a clause of forfeiture, in the event of non-payment, and the vendor made a deed, to be tendered after the last payment became due, but was unable to make the tender, because the assignees of the vendee had left the country, and he thereupon took possession, and sold the land to E, who made valuable improvements; and it turned out that the complainant, who lived in the neighborhood, had acquired the interest of such assignees, which fact he kept concealed until eight years after the purchase money was due: *Held,* that the sale to E operated as a

---

declaration of forfeiture of the contract; and that if the vendor was bound to tender a deed before declaring a forfeiture, he did all in his power to do so, by making the deed and seeking for the parties, to make the tender, and was chargeable with no fault.

3. SAME—*right to recover back money paid, where the vendor rescinds.* Where the vendor of land exercised the right, reserved to him in the contract, of declaring a forfeiture of the same for non-payment: *Held,* on bill in equity, by an assignee of the vendee, for a specific performance, and for a decree for a return of the purchase money paid, in the event specific performance was not granted, that no such recovery could be had.

WRIT OF ERROR to the Circuit Court of LaSalle county; the Hon. E. S. LELAND, Judge, presiding.

This was a bill in equity, by the plaintiff in error, for the specific performance of a contract for the sale of a tract of land in LaSalle county, made by Robinson to David Tullis. By the contract, the price of the land was to be $800, of which sum $175 was paid cash in hand; $225 was to be paid January 1, 1856; $200 January 1, 1857, and $200 January 1, 1858, with interest on the deferred payments at six per cent per annum. Notes were given for the deferred payments. The vendor obligated himself to make a warranty deed upon payment of the several notes when they respectively matured. The contract contained the following clause: "If, however, the said David Tullis shall not punctually pay the said sums at the times and place above named, then the said Milton Robinson is at liberty to declare the above contract and this bond of no effect and utterly void."

Tullis assigned the written contract to Julian and Radcliffe, January 31, 1856, and on June 2, 1857, Julian assigned his interest in the contract to Whitaker. On June 20, 1857, Julian and Radcliffe mortgaged the land to Whitaker. The other facts bearing upon the questions decided appear in the opinion.

Mr. E. S. HOLBROOK, for the plaintiff in error.

Mr. E. F. BULL, for the defendant in error.

Mr. CHIEF JUSTICE LAWRENCE delivered the opinion of the Court:

The land was sold in 1855, and the last payment fell due in January, 1858. The contract contained a clause authorizing the vendor to declare a forfeiture in the event of non-payment. It was assigned by the vendee to Julian and Radcliffe, and Julian assigned to Whitaker, the complainant. Radcliffe and Julian also united in a mortgage to complainant. This was in 1857. The last payment not being made, the vendor sent one of his sons to the house of Radcliffe, near the land, to demand payment and tender a deed. He saw Radcliffe's wife, and told her the deed was ready, but his wife said Radcliffe had left the country, as appears from the evidence to have been the fact. Julian also had left, and the vendor, so far as appears, knew nothing of the interest of Whitaker. There was a person on the land who had been tenant of Radcliffe, and he attorned to the vendor. In March of the same year (1858), the vendor re-sold the land to Evans, who went into possession, and continued in possession until the commencement of this suit, making, in the meantime, valuable improvements. The vendor died in 1863, and in 1866 Whitaker filed this bill against his heirs and Evans, asking a conveyance, and, failing in that, praying for a return of the purchase money paid to the vendor on the first sale, or of so much thereof as would belong to Whitaker.

The mere *laches* of Whitaker in asserting his rights under the bond, being a delay of eight years from the maturing of the last payment until the commencement of this suit, would be a sufficient reason for not granting a specific performance. No satisfactory excuse is shown for the delay. He lived all the time within a few miles of the land, and necessarily knew that Evans had bought and was improving it.

But apart from this, by the terms of the bond, the vendor had the power of declaring a forfeiture, and this he did when

he re-sold the land to Evans. It is said he should have tendered a deed before declaring a forfeiture. The proof shows that he was ready to do so, but both Julian and Radcliffe had left the country, and Whitaker, who probably held the bond, gave no indication that he claimed any interest in the land. The preceding payment had been made by Julian and Radcliffe, and they were the only persons from whom the vendor had reason to expect payment of the instalment then due. We do not decide whether, by the terms of the contract, the vendor was under obligation to tender a deed before declaring the contract forfeited, but only say that if he was so, he did all that was in his power to that end, and is chargeable with no fault.

It is unnecessary to decide whether the statute of limitations, which is set up in the answer, would be a bar to the recovery of the money paid, since, under the decision of this court in the case of *Wheeler* v. *Mather*, 56 Ill. 241, there could be no recovery, independently of the question of time. The writer of this opinion did not concur in that decision, but it is now the rule of the court, and is applicable to the present case. When the record in this case was brought here, that decision had not been announced. The counsel for plaintiff in error endeavors to point out a distinction between that case and the one at bar, but we can see none, in principle.

The decree of the circuit court must be affirmed.

*Decree affirmed.*