## Olof Vider, for use of, etc., v. Edmund Ferguson.

1. WAIVER—*Of the Essence of Time in a Contract—Forfeiture.*— Where the conduct of the defendant in receiving past due payments, and in communications to the plaintiff, written and oral, made by his agents, was such as necessarily to induce in the mind of the plaintiff the conviction that the provision in the contracts making time of their essence, would not be insisted on, such a provision is temporarily waived, and reasonable notice must be given of an intention to resort to the strict terms of the contracts before a forfeiture can be declared.

2. SAME—*Void Declaration of Forfeiture.*—Where strict compliance with the terms of a contract as to times of payment has been waived, and no notice has been given of an intention to enforce these terms, attempted declarations of forfeitures are void, and of no effect upon the rights of the parties.

3. FORFEITURE—*What is Not Sufficient as a Declaration of.*—Where strict compliance with the terms of a contract as to times of payment has been waived, a notice that "unless you wish us to declare the contract forfeited, kindly call immediately," is not sufficient, it being a mere suggestion of a possibility. The provisions as to time having been waived, a definite and specific notice is necessary.

4. RESCISSION OF CONTRACTS—*When by Mutual Assent.*—If either party, without right, claims to rescind a contract, the other party need not object, and if he permits it to be rescinded, it will be by mutual assent.

Vider v. Ferguson.

5. Same—*When Neither Party Can Base Claim upon Contract.*— Where each party has consented to a recission of a contract, neither can base a claim on it.

6. Same—*When Vendee May Recover Back Money.*—A vendee of land may recover back money paid on his contract when the contract has been rescinded by the mutual consent and agreement of the parties.

**Assumpsit**, for money paid. Appeal from the Superior Court of Cook County; the Hon. SAMUEL C. STOUGH, Judge, presiding. Heard in this court at the October term, 1899. Reversed and remanded. Opinion filed March 26, 1900.

**Statement.**—Appellant was plaintiff and appellee defendant in the trial court. Plaintiff brought two suits, each being for the recovery of money paid by plaintiff to defendant on a contract of sale by the defendant of certain lots of land. The suits were, by agreement of the parties, consolidated for trial, and were tried by the court without a jury, a jury being waived. The court found the issues and rendered judgment for the defendant. The contracts are as follows :

" CHICAGO, ILLINOIS, August 18th, 1894.

" The following described real estate, to wit: Lots (25) twenty-five and thirty-one (31), in block (7) of Clybourn avenue addition to Lake View and Chicago, in section thirty (30), township forty (40) north, range fourteen (14) east of the third P M., in Cook county, Illinois, is this day bargained and sold to Olof Vider, 509 Ogden Building, Chicago, Illinois, for the principal sum of seventeen thousand two hundred and fifty ($17,250) dollars, to be paid as follows, to wit: Seventeen hundred and twenty-five ($1,725) dollars cash, the receipt whereof is hereby acknowledged.

" Thirty-one hundred and five ($3,105) dollars, August 18, 1895.

" Thirty-one hundred and five ($3,105) dollars, August 18, 1896.

" Thirty-one hundred and five ($3,105) dollars, August 18, 1897.

" Thirty-one hundred and five ($3,105) dollars, August 18, 1898.

" Thirty-one hundred and five ($3,105) dollars, August 18, 1899.

" With interest at the rate of six per cent per annum, payable semi-annually.

" Purchaser is to pay the taxes and special assessments for the year 1894, and thereafter.

" On the payment of thirty-one hundred and five ($3,105) dollars, August 18, 1895, as above specified, at the office of Albert O. Bosworth, in Chicago, Illinois, deed conveying above described premises to be delivered, and the remainder of the deferred payments above specified to be evidenced by notes of said purchaser, secured by trust deed on said premises. All notes to bear even date herewith and to be payable, both principal and interest, at the office of Albert O. Bosworth, in Chicago, Illinois.

" This sale is made subject to the express condition, which is agreed to and accepted by the purchaser, that the premises shall never be used or excavated for brick-making purposes. Seller will furnish certified printed copy of abstract of title covering period from Government to August 18, 1894. Should the title not prove good, then the said seventeen hundred and twenty-five ($1,725) dollars this day paid shall be refunded, and this contract canceled. But should the purchaser fail to promptly fulfill his agreement herein set forth, time being the essence of this contract, then said sum shall be forfeited by him as liquidated damages, and this contract shall be and become null and void, and shall not operate to create a lien or charge, legal or equitable, in any manner, upon the premises hereinbefore described.

" Abstract delivered to purchaser August 29, 1894.

" Signed in duplicate.

" A. O. BOSWORTH,
" Agt. for Edmund M. Ferguson,
" OLOF VIDER."

" CHICAGO, ILLINOIS, December 31, 1894.

" The following described real estate, to-wit: Lots 26, 27, 28, 29 and 30, in block seven (7) of Clybourn avenue addition to Lake View and Chicago, in section thirty (30), township forty (40) north, range fourteen (14) east of 3d P. M., in Cook county, Illinois, is this day bargained and sold to Olof Vider, of No. 509 Ogden Building, Chicago, Illinois, for the principal sum of sixty-nine hundred and fifty ($6,950) dollars, to be paid as follows, to-wit: Six hundred and ninety-five ($695) dollars cash, the receipt whereof is hereby acknowledged.

" Twelve hundred and fifty-one ($1,251) dollars, December 31, 1895.

" Twelve hundred and fifty-one ($1,251) dollars, December 31, 1896.

" Twelve hundred and fifty-one ($1,251) dollars, December 31, 1897.

" Twelve hundred and fifty-one ($1,251) dollars, December 31, 1898.

" Twelve hundred and fifty-one ($1,251) dollars, December 31, 1899, with interest at the rate of six per cent per annum, payable semi-annually.

" Purchaser is to pay the taxes and special assessments for the year 1894, and thereafter.

" On the payment of twelve hundred and fifty-one ($1,251) dollars, December 31, 1895, as above specified, at the office of Albert O. Bosworth, in Chicago, Illinois, deed conveying above described premises to be delivered, and the remainder of the deferred payments above specified to be evidenced by notes of said purchaser secured by trust deed on said premises.  All notes to bear even date herewith and to be payable, both principal and interest, at the office of Albert O. Bosworth, in Chicago, Illinois.

"This sale is made subject to the express condition, which is agreed to and accepted by the purchaser, that the premises shall never be used or excavated for brick-making purposes.  Seller will furnish certified printed copy of abstract of title covering period from government to December 31, 1894.  Should the title not prove good, then the said six hundred and ninety-five ($695) dollars, this day paid, shall be refunded and this contract canceled.  But should the purchaser fail to promptly fulfill his agreement herein set forth, time being the essence of this contract, then said sum shall be forfeited by him as liquidated damages, and this contract shall be and become null and void, and shall not operate to create a lien or charge, legal or equitable, in any manner, upon the premises hereinbefore described.

" Abstract delivered to purchaser ———, 18—.

" Signed in duplicate.

" A. O. BOSWORTH,

" Agent for Edmund Ferguson.

" OLOF VIDER."

The plaintiff, appellant here, took possession of the premises at the dates, respectively, of the contracts, and continued in possession until May 26, 1898.

Both contracts were assigned by Olof Vider to the State bank of Chicago, for whose use the suits were brought, September 8, 1897.

The following are all the payments made by Vider on the contract of August 18, 1894:

August 18, 1894, the first or cash payment, $1,725; Feb-

ruary 16, 1895, $465.75, being the semi-annual interest due February 18, 1895; August 20, 1895, $465.75, semi-annual interest on deferred payments due August 18, 1895; December 12, 1895, $1,500 on first deferred installment of purchase money, due August 18, 1895. Plaintiff also paid the taxes for the year 1894.

On the contract of December 31, 1894, Vider, the plaintiff, made the following payments, only:

December 31, 1894, the first or cash payment, $695; July 3, 1895, $187.65, being semi-annual interest due June 30, 1895, on deferred payments; December 31, 1895, $187.65, semi-annual interest then due on deferred payments; also the taxes for the year 1894.

The following letters were introduced in evidence by the plaintiff:

"CHICAGO, ILL., Dec. 5, 1895.

MR. OLOF VIDER:

DEAR SIR: On Aug. 18, '95, there was due on your contract of Aug. 18, '94 (lots 25 and 31, Blk. 7, Clybourn Ave. Addn.), the sum of $3,105, payment of which was deferred by you for 'a couple of months.' My yearly report of the transaction on the subdivision is due Dec. 15th and I do not wish to report the above amount still unpaid. Can you not favor me with a generous check, say at least one-half of the amount, before the 10th inst.—$1,500 at least? this will show a disposition and effort to pay the overdue amount and will avoid any inquiry from Mr. Ferguson as to its payment.

Please do me the favor to remit a portion of the amount not later than the 9th inst.

Yours very truly,
A. O. BOSWORTH."

"CHICAGO, October 12, 1896.

MR. OLOF VIDER:

DEAR SIR: I am advised that the sale of property in West Chicago commences Friday next (Oct. 16th). I have now been, I think, very lenient with you and must ask you for check by return mail for not less than $700, with which to pay our West Side taxes. Am short just $694 of the amount and must look to you to help us out. I am doing the very best I can on your overdue interest and payments and when necessity demands it must ask you not to disap-

Vider v. Ferguson.

point me in this request, as I am wholly depending on you for the amount asked.

Please do not disappoint me and I can carry the remainder for you for some time to come.

Very truly yours,
A. O. Bosworth."

"305 Ashland Block,
Chicago, November 9, 1896.

Mr. Olof Vider, 510 Ogden Bldg., 34 Clark street, city.

Dear Sir: Upon examination of the accounts of A. O. Bosworth, who is about to give up the agency of our property, I find that under contract dated August, 1894, you still have due on lots number 25 and 31, in block 7, in our subdivision, which was originally sold to you for $17,250, the following amounts:

| | |
|---|---:|
| Due to August 18, 1896 | $7,935 00 |
| Paid on account | 3,225 00 |
| Amt. still due on principal to Aug. 18, '96 | $4,710 00 |
| Interest on total amount to August 18, 1896 | 621 50 |
| Total due at this date | $5,331 50 |

Under contract dated December 31, 1894, on lots 26, 27, 28, 29 and 30, in block 7, which was originally sold to you for $6,950, we have the following amounts due:

| | |
|---|---:|
| To December 31, 1895 | $1,946 00 |
| Paid on account | 695 00 |
| Still due from you to Dec. 31, 1895 | $1,251 00 |
| Interest on above to June 30, 1896 | 187 65 |
| | $1,438 65 |

Interest on this account has been paid in full to December 31, 1895. There will be no more interest or principal due further than the above account until December 31, 1896. As we are anxious to get Mr. Bosworth's account in shape so that we can close the matters up, we will be glad to have you call on Mr. Frank J. Loesch in the next few days and make some settlement of account which will be satisfactory to Mr. Loesch and to yourself.

Very respectfully,
E. M. Ferguson,
By Charles McKnight."

"Chicago, May 22, 1897.

Mr. Olof Vider, 506 Ogden Bldg., City.

Dear Sir: The writer waited at this office from 10 to

12 o'clock this a. m., pursuant to your appointment with us. We have tried to see you a number of times, calling at your office and also your yard, but meeting with no success.

You are undoubtedly aware that the payments and interest on both of your contracts with Edmund M. Ferguson are very much in arrear, in fact nothing has been paid on either of them for nearly a year and a half. It is imperative that some payments be made at once and at least the interest squared up to date.

Please call at this office at your earliest convenience, and I shall be pleased to talk with you regarding the matter. We trust that you will see the propriety of an immediate compliance with this request.

Yours truly,
Koester & Zander."

" Chicago, Aug. 30, 1897.

Mr. Olof Vider, City.

Dear Sir: Your promise regarding payment of interest on contract for your dock property has so far not been kept. Unless you wish us to declare the contract forfeited, kindly call immediately and oblige,

Yours truly,
Koester & Zander."

" Chicago, Jan. 14, 1898.

Cyrus A. Barker, No. 509 Ogden Bldg., City.

Dear Sir: As per your request we enclose you herewith statement of interest due on the contract of Olof Vider, and aggregating $2,328.54. Some time ago, while negotiating with Mr. Lindgren of the State Bank of Chicago, we proposed to him that if the arrears of interest, as styled in the statement, were paid up and the taxes paid up to date, we would be inclined to make very liberal extensions on the principal past due.

However, as the property has been sold for taxes, we must insist upon prompt action, and trust that we may hear of what you elect to do at the earliest possible moment.

We suppose that you are thoroughly familiar with the status of the contract; however, for your information, we will say that the principal stands as follows:

On the contract No. 1, dated August 18, 1894, there remains due:

On payment maturing August 18, 1895............$1,605
The payment maturing August 18, 1896............$3,105
The payment maturing August 18, 1897...........$3,105

On the contract dated December 31, 1894, there is past due on the principal, the three payments due, respectively, on the 31st day of December, 1895, '96 and '97, for $1,251 each, and aggregating a total of $3,753.

We simply give you the above information so that the entire matter may be properly before you, and assure you that liberal extensions can be arranged on all of them, provided the conditions, as to interest and taxes, as above classified, are complied with.

Very truly yours,

KOESTER & ZANDER."

Inclosed in the foregoing letter was a statement showing interest due on the August, 1894, contract, $1,331.55, and on the December, 1894, contract, $996.99. McKnight was the private secretary of defendant Ferguson; the others, whose names are signed to the foregoing letters, were Ferguson's agents.

Bosworth was defendant's agent at the dates of the contracts, and continued so to be till some time in November, 1896. While he was such an agent he furnished defendant each month a statement showing payments on the contracts up to and including the 15th day of the month, and the dates of such payments, thus informing defendant how the payments were being made. On one occasion, while Bosworth was the agent, he extended the time to make past due payments two months. Zander, while he was agent, and between July 10 and 15, 1897, extended the time to meet overdue payments till September 1, 1897. These extensions were oral.

The following notices were served on plaintiff and the State Bank of Chicago, about May 14, 1898 :

" To OLOF VIDER AND STATE BANK OF CHICAGO, his assignee :

Take notice, that, by reason of the non-payment of said Olof Vider of the taxes for the year 1896, and other years, and the non-payment of installments due August 18, 1895, and August 18, 1896, and on August 18, 1897, and by reason of non-payment of interest upon all installments since February, 1896, all as provided in contract dated August 18, 1894, whereby I agreed to sell to said Olof Vider, and he agreed to purchase lots twenty-five (25) and thirty-one (31) in block seven (7), of Clybourn avenue addi-

tion to Lake View and Chicago, in section thirty (30), township forty (40) north, range fourteen (14) east of the third principal meridian, situate in Cook county, Illinois, I have elected to determine and forfeit, and do hereby forfeit said contract, and I do hereby demand immediate possession of said above described real estate.

Dated Chicago, May 14, A. D. 1898.

EDMUND M. FERGUSON,

By Koester & Zander,

His agents."

" To OLOF VIDER and STATE BANK OF CHICAGO, his assignee :

Take notice, that, by reason of the non-payment by Olof Vider of the taxes and special assessments for the year 1896, and other years, and by reason of the non-payment of installments due on December 31, 1895, and on December 31, 1896, and on December 31, 1897, and by reason of non-payment of interest on principal since June 30, 1895, all as provided in contract dated December 31, 1894, whereby I agreed to sell to said Olof Vider and he agreed to purchase lots twenty-six (26), twenty-seven (27), twenty-eight (28), twenty-nine (29) and thirty (30), in block seven (7), of Clybourn avenue addition to Lake View and Chicago, in section thirty (30), township forty (40) north, range fourteen (14) east of the third principal meridian, situate in Cook County, Illinois, I have elected to determine and forfeit, and do hereby forfeit said contract, and I do hereby demand immediate possession of the said above described real estate.

Dated Chicago, March 21, A. D. 1898.

EDWARD K. FERGUSON,

By Koester & Zander,

His agents."

Subsequently, May 16 and 17, 1898, the defendant, Ferguson, commenced two suits for forcible detainer against plaintiff, the State Bank of Chicago, and Axel Chytraus. The complaints do not appear in the transcript, but counsel for the parties assume in their arguments that the suits were for the recovery of possession of the premises in question. Both suits were dismissed June 1, 1898, on motion of Ferguson, the plaintiff in the suits.

While these suits were pending the following communications were sent by Vider, and the others whose names are signed to it, to the defendant :

" CHICAGO, May 26, 1898.

MR. EDMUND H. FERGUSON and MESSRS. KOESTER & ZANDER, Agents:

We acknowledge the receipt of your notices of March 31, 1898, and May 14, 1898, wherein you inform us that you elect to determine the contracts, dated August 18, 1894, and December 31, 1894, for the sale by Edmund M. Ferguson to Olof Vider, of lots 25, 26, 27, 28, 29, 30 and 31, in block 7, Clybourn avenue addition to Lake View and Chicago, in section 30, township 40 north, range 14 east of the third principal meridian, in Cook County, Illinois, and demand immediate possession of said premises. We are thus advised that you repudiate said contracts, and decline to be further bound by any of their provisions on your part to be kept or performed. While we deny your right or power to so terminate said contracts, without proceeding according to law, or without our consent or the consent of either of us, we deprecate any contests for possession of the real estate involved, and we therefore yield and surrender possession of the premises and property involved in the contract which you have so wrongfully annulled and rescinded, reserving to ourselves such further or other legal remedy as we insist that we have. We also beg to further notify you, that because of your said wrongful acts we shall regard said contracts as rescinded and no longer binding upon either of the parties thereto. We further notify you that the undersigned State Bank of Chicago has never been in possession of said premises and has never claimed, and does not now claim possession thereof, and that the undersigned Olof Vider has, in response of your demand for possession of the said premises, abandoned the same, and hereby places the same at your disposal. And both of the undersigned hereby surrender all claim to the possession of said premises, reserving our right to such personal property belonging to us as may now remain thereon.

OLOF VIDER,
STATE BANK OF CHICAGO,
By John R. Lindgren, Cashier."

It was admitted on the trial that the defendant, Ferguson, took possession of the premises in question May 26 1898, and had since said date continuously remained in possession. The evidence tends to prove that prior to the time of declaring a forfeiture of the contracts, the defendant had always been ready and willing to perform his part

of the contracts, but that the plaintiff had been financially unable to promptly make payments on the contracts.

DENEEN & HAMILL, attorneys for appellant.

LOESCH BROTHERS & HOWELL, attorneys for appellee.

MR. JUSTICE ADAMS delivered the opinion of the court.

The first question presented is whether there was a legal declaration of forfeiture by the defendant Ferguson, and we are of the opinion that there was not. The plaintiff made the first or cash payment on each of the contracts. The first deferred payment on the contract of August 18, 1894, $3,105, was due August 18, 1895, and no part of it was paid until December 12, 1895, when plaintiff paid, and Bosworth, defendant's agent, received, $1,500 on account of it. This was the last payment made on account of the deferred installments of the purchase money.

The semi-annual interest on the deferred payments on the August contract, due February 18, 1895, was paid at that date. The semi-annual interest due August 18, 1895, was paid August 20, 1895, and June 13, 1896, the semi-annual interest on the deferred payments was paid up to and including February 18, 1896, which was the last payment made on the August contract. December 5, 1895, Bosworth wrote to plaintiff, " On August 18, 1895, there was due on your contract of August 18, 1894 (lots 25 and 31, Blk. 7, Clybourn avenue addition), the sum of $3,105, payment of which was deferred by you for a couple of months." On the contract of December 31, 1894, only the first or cash payment and two semi-annual payments of interest, the last December 31, 1895, were made.

October 12, 1896, Bosworth wrote to plaintiff requesting a check for $700, and saying :

" I am doing the very best I can on your overdue payments, and, when necessity demands it, must ask you not to disappoint me in this request, as I am wholly depending on you for the amount asked. Please do not disappoint me

and I can carry the remainder for you for some time to come."

At the date of this letter only $1,500 had been paid on the first deferred installment of $3,105, due August 18, 1895, on the August contract, and nothing had been paid on the first deferred payment on the December contract, due December 31, 1895.

May 22, 1896, Koester & Zander, defendant's agents, wrote to plaintiff, saying :

" You are doubtless aware that the payments and interest on both of your contracts with Edmund M. Ferguson are very much in arrears. In fact nothing has been paid on either of them for nearly a year and a half," etc.

January 14, 1898, Koester & Zander wrote to Cyrus A. Barker, inclosing, by his request, a statement of interest due on the contracts, in which letter is stated the amount of the purchase money past due on each contract. The letter contains the following :

" Some time ago, while negotiating with Mr. Lindgren of the State Bank of Chicago, we proposed to him that if the arrears of interest, as styled in this statement, were paid up, and the taxes paid up to date, we would be inclined to make very liberal extensions on the principal past due. *
* * We simply give you the above information so that the entire matter may be properly before you, and assure you that liberal extensions can be arranged on all of them, provided the conditions as to interest and taxes as above classified, are complied with."

No deferred installment of the purchase money, on either of the contracts, fell due between the date of the last letter and the attempted declarations of forfeiture. We think it clear that the defendant, prior to the time of the attempt to declare the contracts forfeited, had waived his right of forfeiture, in so far that he could not exercise such right by a mere declaration, or otherwise, than by giving a reasonable notice to the plaintiff. The conduct of defendant in receiving past due payments, and in communications to the plaintiff, written and oral, made by his agents, was such as necessarily to induce in the mind of the plaintiff the conviction that the provision in the contracts making time of their

essence, would not be insisted on by the defendant. That such a provision may be temporarily waived, and if so waived, that reasonable notice must be given of an intention to resort to the strict terms of the contract before a forfeiture can be declared, is well settled. Palmer v. Ford, 70 Ill. 369; Allen v. Woodruff, 96 Ill. 11; Thayer v. Star Mining Co., 105 Ib. 340; Watson v. White, 152 Ib. 364; Munson v. Bragdon, 159 Ib. 61; Benedict v. Lynch, 1 Johns. C. R. 369, 379; Harris v. Troup, 8 Paige, 423.

Counsel for defendant seem to rely on the letter of Koester & Zander of August 30, 1897, in which they say, "unless you wish us to declare the contract forfeited, kindly call immediately," as a notice of defendant's intention to insist on the strict terms of the contract. It was not such notice; it was not even a direct threat; it was a mere suggestion of a possibility. The provisions as to time having been waived, a "definite and specific notice" was necessary. 79 Ill. 375; 152 Ib. 375. In Palmer v. Ford, *supra*, the agent of the lessor remarked to the lessee, that unless the ground rents were paid, he would have to declare a forfeiture, and in Monson v. Bragdon, *supra*, the vendor wrote to the vendee:

"Please pay up what is due on your contract, and don't wait for me to dun you every time, for I dislike to do it. I guess we had better go back to the plan of the contract and have monthly payments."

It was held in the former case that the oral statement, and in the latter that the written communication, was not such notice of an intention to insist on the strict terms of the contract as the law requires.

Strict compliance with the terms of the contracts as to times of payment having been waived, and no notice having been given of an intention to enforce those terms, the attempted declarations of forfeiture were "void and of no effect upon the rights of the parties" (Monson v. Bragdon, 159 Ill. 67); and the demands of the defendant for possession of the premises, based on the void declarations of forfeiture, were unwarranted, so that the plaintiff, had he seen fit so to do, might have ignored the void declaration and stood

on his rights.    But, while protesting that the defendant's demand for possession was without lawful right, the plaintiff, in his communication to the defendant of May 26, 1898, offered to surrender to the defendant possession of the premises, which offer the defendant accepted by immediately taking possession thereof, at that date, since which time he has continuously remained in possession.    This was a rescission of the contracts by mutual consent, and the parties have since acted on that theory, the defendant by ceasing to claim from the plaintiff any of the purchase money due by the terms of the contracts, and the plaintiff by ceasing to claim any interest in the premises described in them. That it was and is the understanding of the parties that the change of possession mentioned, terminated the contract, is illustrated by the record before us of the consolidated suits. In each of the suits, the plaintiff seeks to recover back the money paid by him on the contracts, and in each the defendant seeks to recoup as against the plaintiff's claim the value of the use of the premises while the plaintiff was in possession.

" If either party, without right, claims to rescind the contract, the other party need not object, and if he permit it to be rescinded, it will be done by mutual assent."    2 Parsons on Cont., 678.

Had the defendant at all times insisted on the strict terms of the contracts, he might lawfully have exercised his right of declaring them forfeited, in the event of nonpayment of the purchase money or interest as provided in them; in which case he would, as we think, have had the right to retain the first or cash payments, stipulated as liquidated damages, because in that case the forfeiture would merely operate to defeat the rights of the plaintiff under the contracts, leaving the defendant's right under the contracts to retain the sums stipulated as liquidated damages unimpaired.    But the contract having been rescinded and abandoned by mutual consent, we can not perceive how the defendant can reasonably rely on its provisions in support of his claim of right to retain the money paid by the plaintiff.

The plaintiff does not sue on the contracts, but on a promise of the defendant implied by law to refund to him, the plaintiff, money which he paid to the defendant by virtue of contracts which have been rescinded and abandoned by mutual consent, and which the defendant in equity and good conscience should not retain. He sues as if the contract had never existed. Bannister v. Read, 1 Gilm. 100.

Each party having consented to a rescission of the contracts, neither can base a claim on the contracts. See authorities cited in Bannister v. Read, *supra*, p. 100.

In Bryson v. Crawford, 68 Ill. 362, the court, enumerating cases in which a vendee of land may recover back money paid on his contract, say:

"First, when the contract has been rescinded by the mutual consent and agreement of the parties." Ib. 365.

The defendant claims to recoup, as against plaintiff's demand, damages consisting of the value of the use of the land while the plaintiff remained in possession, and plaintiff's counsel resist this claim on the ground that the relation between the parties was that of vendor and vendee, and that to sustain an action for use and occupation, the relation of landlord and tenant must exist.

It would seem that the contracts having been rescinded by mutual consent, which is the theory on which the plaintiff sues, equity and good conscience would require that the *status quo* of the parties shall be restored as nearly as may be.

In the case of Baston v. Clifford, 68 Ill. 74, the court say:

"We are inclined to think that under the authority of Burroughs v. Clancey. 53 Ill. 30, and cases there referred to, the defendant below should be allowed, upon a proper plea or notice, to prove by way of recoupment or set-off, and to avoid circuity of action, not only the rents, issues and profits arising from appellee's possession, and be allowed the same, but also for damages arising from waste committed by him or his agent or tenant while in possession."

Appellee's counsel have discussed the question whether a deed must be tendered prior to a declaration of forfeiture for non-payment of the purchase money, but in the view of

the case expressed in this opinion, we do not deem it necessary to pass on that question.   Our conclusions are, that the appellant can maintain his actions for money paid by him on the contracts, and that appellee may recoup as expressed in Baston v. Clifford, *supra.*

The judgment will be reversed and the cause remanded for further proceedings in accordance with this opinion.