Frances A. Tucker, Plaintiff-Appellant, v. D. J. Beam and Rosella Tucker, Defendants-Appellees.

Term No. 51F6.

Opinion filed May 4, 1951.

Released for publication May 25, 1951.

W. E. KNOWLES, and C. O. CONLEY, both of East St. Louis for appellant.

LOUIS BEASLEY, of East St. Louis, for appellees.

MR. PRESIDING JUSTICE SCHEINEMAN delivered the opinion of the court.

The plaintiff, Frances A. Tucker, contracted to purchase certain real estate from the defendant, D. J. Beam. She has brought this suit at law to recover the partial payments she made, on the ground that the contract was rescinded by mutual consent. From a judgment in the circuit court for the defendant, plaintiff appeals.

Appellee denies mutual rescission, asserting that plaintiff abandoned the contract and that he then terminated it by proper notice of forfeiture, giving him the right to retain the part payment. Also, that neither the pleadings nor the evidence assert any default on his part.

The only witnesses who testified on the trial were the plaintiff and her attorney. Plaintiff's testimony was self-contradictory in some items, but from a consideration of all her statements, and those of her attorney, we find the facts were as follows:

Mrs. Tucker and her daughter had signed a contract to purchase the property in March of 1948 for $3450, and preliminary payments of $400 were made by Mrs. Tucker. The daughter, Rosella Tucker, is joined as a defendant, but made no payments, and no point is raised concerning her. They moved into the premises on June 1, 1948, and were supposed to pay $45 per month thereafter as principal and interest under the contract. Some payments were made, not on time, but Mr. Beam made no objection.

On January 7, 1949, Mrs. Tucker being then two payments in arrears moved out of the premises without previous notice to Mr. Beam. She specifically stated that she had moved out voluntarily. That night she telephoned to Mr. Beam and informed him of her action and that the house was vacant. He asked her if she could make up the payments of $90 and her answer, in

substance, was in the negative: she stated she had expected her mother to help on the purchase of the place, but her mother had taken sick and could not help, and Mrs. Tucker could not find anyone else to loan her that much money. At another point in her testimony, she asserted that, by permission of Mr. Beam, she had secured a tenant for the place and collected one-half of a month's rent in advance for Mr. Beam, which she expected to turn over to him.

Several days later, Mr. Beam personally went to the plaintiff's new residence and served a notice of forfeiture and demanded possession of the property described in the contract. Thereafter he also started a suit in forcible entry and detainer, but when the constable was about to serve the summons on Mrs. Tucker in her attorney's office, the attorney called Mr. Beam and stated the latter could take possession, that Mrs. Tucker made no claim to the property. Mr. Beam then talked to the constable and the summons was never served.

It is to be observed that Mrs. Tucker does not testify that she ever offered, or intended to offer, to make any further payments on the contract. The complaint and her entire testimony are based on the theory that, as vendee, she had a perfect right to default any time she chose, and, by simply discontinuing her payments and abandoning the premises, without objection from the vendor, the law conferred upon her the right to recover payments previously made.

Appellant also asserts that both parties say in their pleadings that the contract was rescinded by mutual consent. We have examined defendant's answer and find therein no statement that the contract was "rescinded" by mutual consent, but there is a statement that it was so "terminated." There is a difference in the shade of meaning of these two terms which is hereafter mentioned.

There is probably no branch of contract law in such a state of confusion as that concerning the rights at law of a defaulting purchaser under a contract for a deed. Although the factual situations differ widely, it remains extremely difficult to state any general principle to be deduced from the case. About all that can be done is to find a majority view, and concede that some cases are not in conformity.

The contract in this case contained the usual provision that time is of the essence, and that upon default in payment the vendor had the option to determine the contract, and thereupon payments made should be forfeited and retained as liquidated damages. It also provided that exercise of the option might be evidenced by serving a notice of forfeiture.

In 55 Am. Jur. "Vendor and Purchaser," Sec. 636, p. 1030, it is stated that, where the contract provides in unambiguous terms that "in case of a failure of the purchaser to make his payments at a specified time, the vendor may declare the contract forfeited, the courts cannot superadd a condition which the parties themselves did not see fit to impose, and require restoration as a condition to the exercise of the right." The case of *Wheeler v. Mather,* 56 Ill. 241 is included in the note.

As to rescission, the same article in 55 Am. Jur., Sec. 534, p. 926, states: "The decisions have differed as to whether the purchaser has a right to recover back money paid by him where an executory contract is rescinded in pursuance of an agreement to rescind." Some of the conflict is attributed to "a difference of opinion as to whether an agreement to rescind the contract of itself implies an agreement to restore the purchaser to the position he occupied when he made the contract."

The difference in opinion is clearly the result of a problem in semantics: Does the word "rescission"

have some technical legal meaning, and if so, what? Some texts and cases use the word indiscriminately with "cancellation" and "termination." For example, see *Vider v. Ferguson,* 88 Ill. App. 136. Other courts carefully distinguish these terms.

■■ In Words & Phrases, under the word "Rescission" there are gathered a number of cases which hold that this word implies the complete abrogation of a contract, and that both parties must then be restored to the *status quo ante.* It is distinguished from "termination" which merely implies an ending of dealings under a contract, and whereby the law leaves the parties as it then finds them. Rescission is sometimes decreed in a court of equity for good cause, such as fraud, but it cannot be arbitrarily effected by one party in the absence of clearly expressed consent of the other.

■ We approve these definitions. But a court must not arbitrarily apply some word to a situation, and then seek to adjudicate rights by reference to the legal intendments of the word. The contract and the subsequent conversations and dealings must be examined, and the rights determined from a consideration of all the facts. It may then become proper to designate the result with a technical word.

In this case the vendor had not refused to accept any payment, nor was he otherwise in default. The vendee was in default, and evinced an intention not to proceed with the contract, disclaiming any interest in the premises. After a subsequent notice of forfeiture, is the vendee entitled to recover previous payments?

■ From an extensive collection of cases in 59 A. L. R. 202, the majority view is that, where the vendee is in default, and vendor is not, and the latter exercises a right of forfeiture, the vendee has no right to recover payments. Included among the citations are *Wheeler v. Mather,* 56 Ill. 241; *Whitaker v. Robinson,* 65 Ill. 411; and *Baston v. Clifford,* 68 Ill. 67.

■ There are two later notes with additional cases. In 102 A. L. R. 861 it appears that, under the majority view, no mutual rescission results from the exercise of the right of forfeiture according to contract, against a vendee in default.

We quote from the latest note in 134 A. L. R. 1068:

"According to the majority American doctrine, as it appears from the later cases, a vendor who because of vendee's default enforces a forfeiture provision of a contract in accordance with its terms does not render himself liable to return money paid on the contract."

Citations include *Morrey v. Bartlett,* 288 Ill. App. 620 and *Forest Pres. Corp. v. Miller,* 307 Ill. App. 243. See also 66 C. J., Vendor and Purchaser, § 1561.

In *King v. Walrath,* 313 Ill. 551, the Supreme Court considered a situation parallel to this, and held that where a vendee voluntarily abandons a contract, he cannot recover payments made, and the subsequent acts of the vendor to establish evidence of the contract's abrogation, including correspondence and notice of forfeiture, did not change this result.

■ Accordingly, from the evidence in this case, we find that the claim of a rescission by mutual consent has not been established, and that the evidence shows merely that the vendor has declared the contract forfeited and terminated by reason of vendee's default and abandonment thereof.

Appellant refers to the long line of cases regarding estoppel, and waiver of the right of forfeiture by acceptance of delinquent payments. Undoubtedly the rule is that, having permitted deviations from the precise terms of the contract, vendor cannot thereafter declare a forfeiture for delay in payment without first giving reasonable notice of his intention to insist upon strict performance. See *Vider v. Ferguson,* 88 Ill. App. 136, *supra.*

■ This rule can have no application to a case in which a vendor is willing to continue under the contract, notwithstanding delay in payments, but the vendee indicates abandonment of the contract and disclaimer of any interest in the property. The question of the right of vendee to make a belated payment is not involved, and neither is the right of vendor to demand strict performance.

■ Here, the vendor has not refused to accept delinquent payments; on the contrary, the conversation in evidence indicates a willingness to accept them. The vendee neither alleges nor testifies to any ability, desire, or intention to make further payments, and has disclaimed the property while in default. Under these facts, no notice of any kind is required. *People ex rel. Nelson v. Union Bank*, 304 Ill. App. 254; *Marlowe v. Chicago Title & Trust Co.*, 323 Ill. App. 278; *King v. Walrath*, 313 Ill. 551, *supra*.

■ The foregoing proposition may properly be connected with the other point raised by appellee; that the complaint was defective on its face in failing to allege that the vendor had refused to perform his part of the contract. In *Glenn v. Price*, 337 Ill. App. 637, the court analyzed a great many prior decisions, including some in which there was not even a provision for forfeiture, and arrived at the conclusion that in a suit by vendee in default to recover his part payments, failure to allege that the vendor had refused to perform his part of the contract, constituted ground for dismissal of the complaint on motion.

For the reasons given, the judgment of the circuit court is affirmed.

*Judgment affirmed.*

CULBERTSON, J. and BARDENS, J., concur.