**UNIVERSAL MATERIALS CORPORATION, an Illinois corporation,
Plaintiff-Appellee,**

v.

**FEDERAL SAVINGS AND LOAN INSURANCE CORPORATION,
Defendant-Appellant.**

**No. 18629.**

United States Court of Appeals,
Seventh Circuit.

June 18, 1971.

**1088**

John F. McCarthy, David J. Shipman, Chicago, Ill., for defendant-appellant; McCarthy & Levin, Chicago, Ill., of counsel.

George C. Rabens, Charles C. Porcelli, Rabens, Formusa & Glassman, Chicago, Ill., for plaintiff-appellee.

Before HASTINGS, Senior Circuit Judge, and KILEY and KERNER, Circuit Judges.

HASTINGS, Senior Circuit Judge.

Plaintiff Universal Materials Corporation (Universal) instituted this action in federal district court against defendant Federal Savings and Loan Insurance Corporation (FSLIC) for recovery of its earnest money deposit given pursuant to a written agreement for the purchase and sale of twenty-two first mortgages. The case was tried to the court, without the intervention of a jury. Thereafter, the trial court filed findings of fact and entered conclusions of law, together with judgment in favor of plaintiff for return of the deposit with interest and costs. Defendant appeals. We affirm.

On June 16, 1966, Universal and FSLIC entered into an agreement for the purchase and sale of twenty-two mortgages aggregating $1,542,500 in principal amount at a purchase price of $1,012,500. The contract of sale, prepared by FSLIC, provided that if Universal failed or refused to complete the purchase, its earnest money deposit of $25,000 would be forfeited, except as otherwise set forth therein.

Paragraphs 6 and 8 of said contract are primarily in issue and they provide in relevant part:

"6. * * * It is understood and agreed, and Buyer represents, that Buyer proposes, in part, to finance the purchase covered hereby through a lending institution *from which it has received an adequate loan commitment*. It is further agreed that Buyer's lending institution shall have a period of thirty (30) days after the delivery of * * * copies [of the mortgages] to examine and approve the same and the foreclosure proceedings presently pending with respect to said Mortgages. In the event that such approval shall not be given within said thirty (30) day period, then this contract shall be null and void, as provided in paragraph 8 hereof.

"8. * * * [I]n the event that Buyer's lending institution shall fail to give its approval to the loan and foreclosure documents, as provided in paragraph 6 above, then this contract shall be null and void, and the earnest money shall be refunded to Buyer." (Emphasis added.)

On May 26, 1966, prior to entering into the agreement, Universal through its agent, George Stanaszek, received a letter from an officer of Wilkinson's, Inc., a mortgage banking firm, to which was attached a "take-out commitment" to purchase the mortgages from an in-

terim lender in the amount of one million three hundred thousand dollars. In addition, the letter contained the representation that "if you expect to have difficulties with your local interim lender, I have made arrangements for an interim loan here in Minneapolis."

Previously, Universal had received letters from Mercantile Financial Corporation, differing only in amount indicating its "interest" in providing a one-year mortgage loan on the project. Such interest was conditioned on Universal's acquiring an unconditional commitment to pay Mercantile out in one year from a reliable financial source and acceptable documentation and was further said to be "subject to review of the additional information requested, by our legal counsel and Credit Committee in their sole judgment." Charles C. Porcelli, one of plaintiff's shareholders, directors and officers, testified that Mrs. J. B. Leider, signator of the above letters, had definitely told him that her company would make the interim loan "with no problem at all," and that it was subject only to the borrower obtaining a take-out mortgage. Mrs. Leider testified on deposition that so far as she knew, Mercantile had never issued a "firm commitment" to Universal for the interim financing.

Porcelli also testified that he had discussed the possibility of obtaining money for the project with Mr. Frank McCabe of the Ivor B. Clark Company. He stated that McCabe told him the loan was "very feasible," that he would want to see the documents and title reports, and that he could get between a million four and a million eight hundred thousand by way of loan money.

Copies of the notes and mortgages were given Porcelli approximately ten days after the execution of the contract. Stanaszek testified that he had Porcelli deliver to him over twenty documents, consisting of mortgages, notes and title reports, which were forwarded to Wilkinson's, Inc. for approval by an attorney. Wilkinson's called Stanaszek subsequently to inform him that attorneys had advised it not to make the loan since there could have been some fraud involved when the original notes were signed. Porcelli received a letter from the Ivor B. Clark Co. to the same effect, which stated, "Herewith enclosed please find Notes, Mortgages and Preliminary Reports of Title in regard to [the contract properties]. * * * [T]he main reason the investor refuses to make this loan is that there will be no warranty of title, and the position of the secondary creditors not being finally determined."

During the summer of 1966, Universal notified FSLIC on three occasions to either return the earnest money or extend the time of the contract because it was unable to obtain written approval of the documents and foreclosure proceedings. For the first time, in August, 1966, FSLIC inquired as to the identity of Universal's proposed lenders and was informed that one of them was Draper and Kramer. Thereafter, FSLIC twice inquired of Draper and Kramer about the progress of the loan request and on September 3, 1966, it extended the time for approval of the documents under the contract to October 1, 1966.

On September 29, 1966, Universal notified FSLIC that its mortgage company had rejected the documents which had been submitted for approval and Universal again demanded return of its $25,000 earnest money deposit. FSLIC refused since "the contingencies provided for in that Agreement for the return of that sum did not occur."

On the basis of the foregoing, the district court found that Universal had what it believed to be adequate loan commitments from several lending institutions when it entered into the agreement; that by the terms of the agreement there could be no firm or written commitment by any lending institution before the date of the agreement; and that the parties contemplated that any forthcoming commitment for a loan could come only after approval of the documents by a lending institution. Since it was stipulated that no lending institution gave its written approval to the documents,

the court held that FSLIC was legally bound to return Universal's earnest money deposit and entered judgment accordingly.

FSLIC contends that under paragraph 6 of the agreement, Universal represented and agreed that it *had* received a loan commitment from a lending institution. It then claims that implicit in the court's findings is the assumption that Universal did not, in fact, have a loan commitment at the time of making the agreement and that, thus, there was no lending institution to which it could have submitted the loan documents for approval. Therefore, FSLIC argues, the absence of a commitment was a failure and default on the part of Universal barring recovery of the earnest money deposit.

Since FSLIC concedes that Universal may have had a take-out loan commitment from Wilkinson's, Inc. at the time it entered into the agreement, it is asking us, in substance, to define "adequate loan commitment", as used in paragraph 6 of the agreement, to mean a written binding undertaking, with or without conditions, by a financial institution to provide interim financing.

"Adequate loan commitment" is not defined in the agreement. There is no express reference either to a "written" commitment or to "interim" financing. Apparently applying a subjective standard, the trial court found, as a matter of fact, that Universal had what it believed to be "adequate" loan commitments from several lending institutions when it entered into the agreement. The evidence amply supports such finding. Not only did Universal admittedly have a "take-out" commitment from Wilkinson's, Inc., but Wilkinson's, Inc.'s letter also referred to the availability of interim financing. Likewise, statements of "interest" in providing interim financing were contained in letters from Mercantile. This gives support to private conversations which Porcelli had with Mrs. Leider to the effect that if take-out financing were obtained, there would be interim financing "with no problems at all." Also, Porcelli testified unequiv-

ocally that he considered the commitments of Wilkinson's, Mercantile and Ivor B. Clark to be "adequate."

Moreover, FSLIC's own actions were not inconsistent with the trial court's finding and interpretation of "adequate loan commitment." The evidence was that FSLIC considered representations over the phone by Mr. Naiman, of Draper and Kramer, to the effect that he was "very much interested" and that "he had not come up with any source for the money" sufficiently adequate to allow further extension of the contract deadline. Indeed, the first inquiry by FSLIC about the "adequate loan commitments" did not even occur until over a month after the original contract deadline.

Finally, although FSLIC claims it is irrelevant, it is undisputed that Universal did submit the mortgage documents to three lending institutions, at least two of which refused to finance the project because of defects in such documents.

In short, given the circumstances of this case, there is ample support for finding that Universal did have an "adequate loan commitment" from lending institutions within the meaning of paragraph 6 of the agreement. Further, it did, in fact, submit the mortgage documents to such institutions for approval. If "adequate" meant other than subjectively adequate to Universal, FSLIC had ample opportunity to examine Universal's commitments both before and after execution of the contract. Likewise, since FSLIC authored the agreement in question, if it had intended to provide for a written binding commitment, with or without conditions, for interim financing, clearly it could have done so.

The cases cited by appellant are readily distinguishable from the case at bar. In Linster v. Regan, 108 Ill.App.2d 459, 248 N.E.2d 751 (1969), a vendor of a restaurant business withheld, as forfeited, money paid by a defaulting vendee in the purchase and sale of such business. The court found that the vendee had breached the contract by refusing to complete the transaction and was, there-

fore, not entitled to receive its $500 deposit. Likewise, in Glenn v. Price, 337 Ill.App. 637, 86 N.E.2d 542 (1949), the court affirmed the dismissal of an action wherein the plaintiff was seeking to recover his $2,000 down payment on the purchase of a farm after he was financially unable to complete its purchase. The court there held that a defaulting purchaser cannot recover a down payment when he is in default and the vendor is ready and able to comply with the terms of the contract. *Id.* at 644, 86 N.E.2d 542. In each of these cases, the purchaser was in default and there was no contractual provision for the disposition of the deposit. In the instant case, however, the reason for non-performance was defective mortgage documents and the trial court found that Universal did not default. Also, there existed a provision for the disposition of the earnest money deposit in the instant contract which unambiguously required its return to appellee if no lending institution gave written approval to the documents within thirty days.

The case most relied upon by appellant, Coastal Oil Co. v. Eastern Tankers Seaways Corp., 29 N.J.Super. 565, 103 A.2d 26 (1954), involved the purchase and sale of an American-flag steam tanker at a price of $1,150,000. The purchaser deposited $115,000 in escrow and contractually warranted, *inter alia*, " * * * that it is, and will be, on the closing date, a citizen of the United States within the meaning of the appropriate and applicable sections of the Shipping Act * * *," and that "it will meet all of the operational and financial requirements of the United States Government and of the Maritime Commission * * *." The agreement further provided that if the buyer did not obtain Commission approval or if the Commission failed to act by a certain date, the buyer might terminate the contract and receive back the money placed in escrow.

Approval by the Commission was not forthcoming and the sale of the tanker was not completed. Seller sued charg-

ing that the buyer was not a citizen of the United States within the meaning of the Shipping Act and that it did not meet the operational and financial requirements of the Government and the Commission. The buyer denied such allegations and counterclaimed for its escrowed money. On appeal, the court reversed the trial court's grant of summary judgment in favor of the buyer, holding that a question of material fact was in issue. It further stated:

> " * * * [I]f a promisor prevents or hinders the occurrence or fulfillment of a condition in a contract, *and the condition would have occurred or would have been fulfilled except for such hindrance or prevention on the part of the promisor,* then the performance of the condition is excused and the liability of the promisor is fixed regardless of failure to fufill the condition." (Emphasis added.) *Id.,* 103 A.2d at 32.

In the case at bar, the factual issue was determined adversely to appellant by the trial court when, after a trial, it found that appellee had what it believed to be "adequate" loan commitments. Moreover, the evidence demonstrated that even with written binding agreements to provide interim financing, the mortgage documents would not have been approved because of defects therein.

Accordingly, we hold that since Universal did have "adequate" loan commitments within the meaning of paragraph 6 of the agreement and since no lender approved in writing the submitted documents within the contractual time, Universal, by the unambiguous terms of the agreement, is entitled to recover its earnest money deposit. To hold otherwise would enable an agency of the federal government to be unjustly enriched at the expense of a private party.

We have considered appellant's other contentions and have found them to be without merit. The judgment of the district court is in all respects affirmed.

Affirmed.