WILLIAM H. PRUETT *et al.*, Plaintiffs-Appellants. *v.* LA SALCEDA, INC., Defendant-Appellee.

First District (1st Division)    No. 63216

Opinion filed January 3, 1977.—Rehearing denied January 26, 1977.

Richard L. Hoffman, of Porter & Hoffman, of Evanston, for appellants.

Rudnick & Wolfe, of Chicago (Stephen M. Passen, of counsel), for appellee.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

William H. Pruett and Shirley J. Pruett (plaintiffs, purchasers) brought

suit against La Salceda, Inc. (defendant, seller) to recover earnest money paid to defendant pursuant to a written contract for the purchase of a new home. After trial without a jury, judgment was entered in favor of defendant. Plaintiffs have appealed.

In this court, plaintiffs, in their initial brief, urge that the judgment is contrary to the default provisions of the contract and that by any interpretation of the contract the judgment appealed from resulted in a forfeiture. Defendant contends that under the written contract, the earnest money deposit was to be retained by the defendant as liquidated damages because of the purchasers' default. In their reply brief, plaintiffs urge that the rights of the parties should be governed by paragraph 6 of the written contract, which we will later elaborate upon, and that there is no express language in the contract which constitutes a liquidated damage clause; also, that plaintiffs do not urge any theory which would work an injustice against defendant.

The facts are not in dispute. On Sunday, December 2, 1973, the parties entered into a one-page form contract with various blanks which were filled in. This document reflected payment by plaintiffs of $1000 as earnest money or as a down payment. The contract also indicated that the "Balance of down payment $7,700" was due within 10 days and the balance of $78,350 was due at closing. The agreement covered purchase by plaintiffs of a home then under construction by defendant.

On December 6, 1973, the parties entered into the formal contract here involved which indicated "DEPOSIT PAID HEREWITH: $1,000.00-$7,700.00 upon signing of contract" with the balance to be paid upon delivery of possession.

On January 2, 1974, representatives of the seller met with the purchasers who stated that they were unable to perform the contract and therefore would be obliged to default. The seller rejected this position and expressed its intention to proceed with the contract. The home was completed pursuant to the conditions of the agreement. In due course the deed was tendered to the purchasers by certified mail but they refused to accept delivery of the deed and rejected the tender of performance. The seller served the purchasers with a notice of default and forfeiture which was rejected and the suit followed.

With commendable candor, counsel for plaintiffs states in his brief that the pleadings and trial raised two factual issues: whether plaintiffs had breached the contract by anticipatory repudiation and whether defendant had breached the contract by failing timely to complete the building. Plaintiffs agree that the court found in favor of defendant on both of these issues and they concede that these findings are not against the manifest weight of the evidence. We agree with counsel for plaintiffs that only legal questions remain.

The arguments raised by plaintiffs, the buyers, are all centered around paragraph 6 of the printed formal contract. This entire paragraph appears as follows:

"6. If there be any lien or encumbrance or defect in title due to any act or omission of Purchaser or arising in the chain of title at or after conveyance to Purchaser, so that Chicago Title & Trust Company shall refuse to issue its Standard Owner's and Mortgage Policies, showing good title in Purchaser, if such defect shall not be cured within ten (10) days, or if the lender fails or refuses to issue approval for the loan, or if any other default by the Purchaser occurs, then the Seller shall have the option of rescinding this contract. If the Purchaser fails to cure or remove any of the above objections or refusals for which he is responsible, then Seller is authorized to reimburse himself for expenses incurred on the Purchaser's account before refunding the balance of the down-payment deposited, and all other deposits made with the Seller. Under such conditions and circumstances, the Purchaser also shall concurrently therewith reconvey to Seller any interest of purchase in said real estate, free and clean of any liens or encumbrances resulting from any act or omission of Purchaser or those claiming by, through or under him. If the report on title or Title Insurance Policy so required to be furnished by the Seller discloses any defects in title, Seller shall, upon rendering the same to Purchaser or his agent within twenty (20) days from the date hereof, have thirty (30) days from the date which such report or Title Insurance Policy bears within which to cure such defects and to furnish such Title Insurance Policy or a later report showing such defects cured or removed. If such defects in title not be cured within said thirty (30) days, Purchaser may terminate this contract or may, at his election, take the title as it then is with the right to deduct from the purchase price liens or encumbrances of a definite or ascertainable amount, upon giving to Seller or its agent notice of such election and tendering performance on its part, and in default of such notice of election or tender of performance within ten (10) days after written notice to Purchaser or his agent of the inability of Seller to cure such defects this Contract thereupon shall, without further action by either party, become null and void. If this Contract be terminated, except for Purchaser's default, said earnest money shall be returned to the Purchaser."

The arguments presented by plaintiffs appear to us to contain a degree of inconsistency. In their initial brief, plaintiffs take the position that paragraph 6 above quoted is ambiguous and that the resulting doubt should be construed against the seller which prepared the agreement. On

this basis plaintiffs reach the result that there is no provision in the contract which supports refusal of the seller to return the earnest money. In plaintiffs' reply brief they take the position that there is no express language in paragraph 6 which constitutes a liquidated damages clause. In our view of the situation, the last mentioned theory should be applied in the case before us, although we disagree with plaintiffs as to the result which follows.

We construe paragraph 6 of the agreement as referring to defects in title existing "at or after conveyance to Purchaser" and to no other type of default by either party. Following this descriptive and limiting language, the paragraph provides for a number of specified contingencies followed by a general clause.

■■ The specifics are refusal by the Chicago Title & Trust Company to issue its standard policies; failure of the seller to cure any defect in title within 10 days; or failure of the lender to approve the mortgage loan. The general language then follows immediately, "or if any other default by the Purchaser occurs" followed by the provision that the seller shall then have the option of rescinding the contract. Plaintiffs urge that the phrase "any other default by the Purchaser" includes anticipatory repudiation, as in the case before us, or any other default or refusal by the purchaser to perform, without exception. We disagree. It seems clear to us that paragraph 6 is limited to situations which exist "at or after conveyance to Purchaser" and not to the type of repudiation or default which occurred in the case before us. We would apply here the familiar principle of *ejusdem generis.* Since the specifics are followed by one general statement, the latter is limited to include only things or situations of the same type or classification as the specific words. (*Bullman v. City of Chicago* (1937), 367 Ill. 217, 226, 10 N.E.2d 961, and *Kravis v. Smith-Marine, Inc.* (1974), 20 Ill. App. 3d 483, 488, 314 N.E.2d 577, *leave to appeal denied,* 57 Ill. 2d 604.) Application of this principle is supported by the express limitation of paragraph 6 to the situation which exists "at or after" conveyance of the real estate. In the case before us, plaintiffs repudiated the contract long before the conveyance stage. Later, plaintiffs rejected tender of a deed so that the dealings between these parties never arrived at the posture of "at or after" conveyance.

■■ Plaintiffs stress the final sentence of the paragraph, "If this Contract be terminated, except for Purchasers' default, said earnest money shall be returned to the Purchaser." We agree that this language, construed by itself, expressly excepts situations resulting from the purchasers' default and provides that in all other situations all earnest money shall be returned to the purchasers. In our opinion, this is not tantamount to a specific converse statement that where default is made by the purchaser, the earnest money will *not* be returned. This conclusion is

strengthened by the presence of the specific words "except for Purchaser's default," and also as already stressed, by the complete limitation of the entire subject matter of paragraph 6. This final sentence of the paragraph cannot be read and interpreted alone. It must be construed in the light of all of the language in paragraph 6 and in the entire balance of the contract. "The contract should be construed as a whole and not from particular phrases, and the whole instrument should be given effect, if possible." *Llewellyn v. Board of Education* (1927), 324 Ill. 254, 258, 259, 154 N.E. 889.

To summarize, as a matter of law we find no ambiguity here and no express provision in this agreement for retention of the earnest money by the seller in event of default by the buyers.

■■ However, the absence of such an express provision does not lead us to the conclusion desired by plaintiffs. In our opinion, the law of Illinois is quite clear in approving refusal of defendant to refund the earnest money in accordance with the result reached by the trial court. In *Linster v. Regan* (1969), 108 Ill. App. 2d 459, 248 N.E.2d 751, the Second District of this court dealt with a written agreement for the sale of a restaurant business. The buyer made a down payment and the contract provided for payment of the balance upon the closing. There was no provision "for forfeiture of the deposit, or any part thereof, in event the plaintiff [buyer] failed to complete the transaction." *Linster*, 108 Ill. App. 2d 459, 460.

Mr. Justice Davis, speaking for the court, cited *Glenn v. Price* (1949), 337 Ill. App. 637, 86 N.E.2d 542, *leave to appeal denied*, 403 Ill. 628, and, *Tucker v. Beam* (1951), 343 Ill. App. 290, 98 N.E.2d 871. The opinion holds that, in the absence of an express contract provision to the contrary, earnest money or down payment upon a contract should be accepted as the bargain and agreement of the parties and as an assurance to the seller that the buyer will perform. Consequently in event of default by the buyer, such earnest money or down payment may be retained in full by the seller without reference to the amount of actual damages which may have resulted to the seller from the buyer's default. In our opinion, the decision of the case before us is governed by *Linster*.

We are particularly impressed by the strong statement in *Linster* that "to hold otherwise would be to permit a party to sustain an action based on his own breach of contract where the other party stands ready and willing to perform." (108 Ill. App. 2d 459, 463.) That reasoning applies forcefully to the case before us where there was admittedly an anticipatory repudiation by plaintiffs and a consistent, continuing, and complete performance by defendant. Adoption of plaintiffs' position here would authorize any buyer freely to rescind the contract unilaterally and to receive refund of the earnest money at any time until the seller had changed his position or incurred actual damages.

Our search discloses no Illinois case decided after *Linster*. We note that in *Hockenbury v. Lorentz* (1976), 35 Ill. App. 3d 983, 343 N.E.2d 90, the Third District of this court cited *Linster* and *Glenn* in connection with a statement by the court concerning "the traditional rule, adopted somewhat reluctantly by Illinois courts, which denies restitution of a down payment to a defaulting purchaser without regard to whether any actual damage was incurred by the vendor." (35 Ill. App. 3d 983, 985.) The use by the court of the word "reluctantly" may possibly have resulted from the fact that *Linster* noted the existence of a minority rule supported by Professors Williston and Corbin that a defaulting purchaser is entitled to restitution in situations where the down payment is greater than the seller's actual loss. The decision in *Hockenbury* does not involve a factual situation such as in the case before us but is concerned with the waiver of the right to forfeit by a seller in connection with an installment contract for purchase of real estate.

We note also *Universal Materials Corp. v. Federal Savings & Loan Insurance Corp.* (7th Cir. 1971), 444 F.2d 1087, wherein the court of appeals referred to *Linster* and *Glenn* but differentiated them from the case before it. The court pointed out that both of these cases involved a defaulting purchaser in a situation where there was no contractual provision for disposition of the down payment. The court of appeals dealt with a situation in which a party which did not default was granted recovery of earnest money where the contract "unambiguously required its return." 444 F.2d 1087, 1091.

Since we conclude that the sellers are legally entitled to retain the earnest money, the amount of their actual damages has no materiality and we need not consider the ingenious argument advanced by plaintiffs in this regard. The judgment appealed from is accordingly affirmed.

Judgment affirmed.

O'CONNOR, and JOHNSON, JJ., concur.