MURRAY APFELBAUM, INCORPORATED, APPELLANT, v. SAMUEL TOPF AND JENNIE TOPF, RESPONDENTS.

Argued October 21, 1927—Decided February 6, 1928.

344

For the appellant, *Israel B. Greene.*

For the respondents, *Henry L. Grosken* (*Edmond C. Moriarty* and *Arthur F. Egner,* of counsel).

The opinion of the court was delivered by

KALISCH, J. At the Essex Circuit the plaintiff, appellant here, was nonsuited. From the judgment of nonsuit it has appealed to this court.

The plaintiff, a firm of brokers, brought its action to recover from the defendants below, respondents here, $3,575, which sum it claimed it had earned as commissions in procuring a purchaser for the defendants' property, under the terms of a contract entered into between the plaintiff and defendants, on December 12th, 1925, and which contract reads as follows:

"If and when title to premises No. 466-468 Clinton avenue, Newark, New Jersey, is passed and the full consideration paid, pursuant to the contract for sale between Samuel Topf and Jennie Topf, his wife, and Christy Kravakis and Alexander Collis, dated December 12th, 1925, we agree to pay the sum of three and one-half per cent. on the first $20,000 of the purchase price and two and one-half per cent. on the balance thereof to Murray Apfelbaum, Inc., as its commission for effecting the consummation of the sale and payment of the consideration for said premises, pursuant to the terms of said contract; it being distinctly understood that we shall not be under any obligation whatsoever to pay the above sum or any other sum or sums of money hereunder, if for any reason not due to our default, title to said premises is not closed, and the full consideration paid as aforesaid, and we shall be liable only in the event of passing of title or in the event of failure to pass title, through our default.

(Signed) SAMUEL TOPF,
JENNIE TOPF.

Dated, December 12th, 1925."

The plaintiff procured a purchaser for the defendants' property. A contract of purchase was entered into between the prospective vendor and the prospective vendees. The price to be paid for the property, as agreed upon between the parties to the contract of sale, was $135,000. The sale was never consummated.

By the agreement of sale the defendants contracted to convey the premises to the purchasers, free and clear of encumbrances, excepting certain mortgages, leases and facts shown by the survey. A search of the records into the title of the defendants to the premises, contracted to be conveyed by them to the purchasers, revealed that the premises were subject to certain restrictions contained in the covenant of a deed in the chain of title of defendants, which covenant is as follows:

"This conveyance is made subject to the following express covenant on the part of the said party of the second part, their heirs and assigns, that there shall not be erected upon said land or any part thereof any brewery, slaughter house, glue or chemical factory of any kind, any beer saloon, beer cellar or any place in which beer, wines or liquors shall be sold, or any building in which shall be carried on any business offensive, noxious or detrimental to the use of said land or the adjoining or contiguous land or any part of the same for private residence, nor shall said land be used for any purpose which would create a nuisance. The said party of the first part hereby agree that all deeds hereafter made by them for any portion of the remainder of said tract now standing in the name of E. Luther Joy, as owner, on Clinton avenue and Bergen street shall contain the above written restrictive clause and covenant on part of the purchaser."

By a written stipulation, offered in evidence, the defendants admitted that these restrictions were contained in their chain of title and that they had not been released or canceled. The defendants also admitted that the title did not pass because the purchasers rejected the deed because of the restrictions.

It is clear from a plain reading of the contract that it was contemplated by the parties thereto that no commission was to be paid to the appellant in the event title did not pass

and the sale was not consummated, pursuant to the terms expressed in the contract of sale, unless such failure in the respects mentioned was the product of an act of default committed by the prospective vendors. It is conceded in the record that the prospective purchasers refused to take title because of restrictions contained in an ancient deed in the defendants' chain of title.

In view of the fact that the case was tried and disposed of in the court below, upon the theory that the covenant containing the restrictions was not released or canceled, we need not stop to consider whether or not they had ceased to be of any legal force, since the adoption of the eighteenth constitutional amendment, the Volstead act, and the statutes of this state, and under the ordinances of the municipality, in which the premises are situated, by reason of the legislation referred to, and whereby the restrictions had become mere personal covenants to be entered into by a purchaser to refrain from committing violations of law, and, hence, now relate to personal conduct of the owner of land, and not to the use of the land for any and all lawful purpose or purposes.

The question before us is whether from the facts and circumstances of the case the failure to pass title for the premises in question was due to any default on part of the prospective vendors. At first blush, it appears that the failure to pass title was due to the willful act on part of the prospective vendees not to accept the title which the prospective vendors were ready and willing to give.

Conceding, however, that a vendee may properly refuse to accept a deed where it appears that the title of the vendor is defective, and that that is the case here, such a situation does not *per se* determine the right of a broker to be paid a commission where the payment thereof is made expressly to depend upon the actual passing of title and consummation of the sale, unless it is made to appear that the vendor, when he entered into the contract with the real estate broker, fraudulently concealed the fact of the existence of the restrictions on the property, or by some other willful act, pre-

vented the title from passing and from the sale being consummated.

The case is utterly barren of any testimony or circumstance indicating that the respondents even knew of the existence of the restrictions in the ancient deed, or of any willful act on their part to which the failure to pass title and consummate the sale was due.

We think the only reasonable meaning to be given to the word "default," reading the contract in its entirety, is that the nature of the default contemplated by the parties was some willful act done by the respondents to defeat the passing of the title, and the consummation of the sale.

Judgment is affirmed, with costs.

*For reversal*—None.