29 N.J. Super. 565 (1954)
103 A.2d 26
COASTAL OIL COMPANY, A NEW JERSEY CORPORATION, PLAINTIFF-APPELLANT,
v.
EASTERN TANKERS SEAWAYS CORP., A DELAWARE CORPORATION, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued December 21, 1953.
Decided February 18, 1954.
*567 Before Judges CLAPP, GOLDMANN and EWART.
Mr. Harold H. Fisher argued the cause for appellant (Messrs. Shanley & Fisher, attorneys; Mr. Frank L. Bate, on the brief).
Mr. Walter H. Jones argued the cause for respondent (Mr. Irving C. Evers, on the brief).
*568 The opinion of the court was delivered by EWART, J.A.D.
This suit arises out of a written contract, copy whereof is annexed to the complaint, entered into between the plaintiff and the defendant on March 11, 1953 by which the former agreed to sell and the latter to buy, the American flag steam tanker "Rosina Marron" at a price of $1,150,000, payable as follows: (a) by the buyer depositing $115,000 with the First National Bank of Jersey City as escrow holder for the joint account of the buyer and seller and to be released to the seller upon the closing of title; (b) by the payment of $335,000 at the time of closing title, and (c) by the buyer assuming payment of a first preferred mortgage for $700,000 against the vessel held by the United States of America. A specific date for settlement is not set forth in the contract, but paragraph 6 thereof provides for delivery of the vessel during the month of April 1953. By supplemental agreement between the parties, time for delivery of the vessel was extended to June 26, 1953, plus such additional time, if any, required to make certain repairs pursuant to the provisions of paragraph 7 of the agreement.
Approval of the proposed sale by the U.S. Maritime Commission was essential and by mutual agreement between the parties, the date for definitive action by the Maritime Commission, fixed at April 8, 1953 by paragraph 4 of the contract, was extended to May 19, 1953.
The significant portions of the contract involved in this suit are the following:
"THIRD: Seller and Buyer each warrants that it is, and will be, on the closing date, a citizen of the United States within the meaning of the appropriate and applicable sections of the Shipping Act of 1916, as amended.
FOURTH: The Buyer warrants that it will meet all of the operational and financial requirements of the United States Government and of the Maritime Commission in order to obtain the approval and release as referred to hereinabove. If the Buyer does not obtain such approval and release or if the Maritime Commission has not taken definitive action by April 8, 1953, then in either event, the Seller or the Buyer may terminate this agreement unless the Buyer on that date agrees to pay all cash for the *569 vessel. In the event of termination of the agreement by either the Seller or the Buyer hereunder, the deposit in full shall be released to the Buyer and any and all liability of the parties under this agreement shall thereupon cease and terminate.

* * * * * * * *
ELEVENTH: In case of default by the Buyer, such part of the deposit, as may be necessary, shall be applied toward payment of actual damages to the Seller, and the Seller shall be free to sell the vessel either by public or private sale and the deficiency by reason of such sale, if any, shall be paid to the Seller by the Buyer. If default should be made by the Seller in the execution of a Legal Transfer or in the delivery of the vessel and all belonging to her in the manner and within the time herein specified, the deposit in full shall be released to the Buyer, and unless the default shall have arisen from events over which the Seller has no control the Seller shall also make due compensation for the damages and expenses and loss of time caused by the nonfulfillment of this contract.

* * * * * * * *
FOURTEENTH: If any disputes or differences should arise in connection with this Agreement, the same shall be referred to a single arbitrator in New York to be appointed by the parties hereto, but if the parties cannot agree upon a single arbitrator, they shall each appoint an arbitrator and the two shall appoint a third arbitrator. The decision of the single arbitrator, or in the event there are three arbitrators, the decision of any two shall be final and binding upon the parties hereto and may for the purpose of This Agreement be made a rule of Court."
Defendant having failed to complete the purchase of the vessel, plaintiff files a complaint in three counts.
The first count charges the defendant has defaulted in the performance of the contract; that plaintiff has always been and is ready, willing and able to deliver the tanker in accordance with the terms of the contract; more particularly that the defendant has breached the warranties contained in paragraphs 3 and 4 of the contract in that it was not, either at the signing of the contract on March 11, 1953 or at any time thereafter, a citizen of the United States within the meaning of the Shipping Act of 1916 and in that the defendant did not meet the operational and financial requirements of the U.S. Government and of the Maritime Commission in order to obtain the requisite approval and release referred to in the contract.
*570 The second count repeats the allegations of the first count and, in addition thereto, alleges that the representations and warranties made by the defendant in paragraphs 3 and 4 of the contract were false when made, to the knowledge of defendant; were made for the purpose of inducing the plaintiff into entering into the said contract; that plaintiff did enter into said contract in reliance upon said representations and warranties; and that by reason of the falsity of said representations and warranties the defendant could not obtain the requisite approval of the United States Government and of the Maritime Commission, as aforesaid, by reason whereof plaintiff has been damaged. In effect, the second count charges that the warranties contained in paragraphs 3 and 4 of the contract were fraudulent in that defendant knew at the time it entered into the contract that it would not qualify for the Commission's approval because it was not and would not be at the time fixed for passing title a citizen within the meaning of the Shipping Act of 1916 and because it would not meet the financial and operational requirements of the Commission.
The third count repeats the allegations of the first count and demands as damages the balance of $335,000 allegedly due under the contract.
Defendant's answer admits the making of the contract but denies the other material allegations of the complaint and sets up as separate defenses: (1) that the complaint fails to state a cause of action; (2) that by paragraph 14 of the contract the parties agreed that any differences arising under the contract should be submitted to arbitration, wherefore defendant says the court is without jurisdiction to entertain the action by reason of plaintiff's failure to submit to arbitration; and (3) that by paragraph 4 of the contract the parties agreed that if the buyer did not obtain approval of the proposed sale and transfer and the release of the plaintiff from the obligation on its bond, or if the Maritime Commission had not taken definitive action by April 8, 1953, then in either event either party might terminate *571 the agreement; that by mutual agreement between the parties the time for obtaining approval of the Maritime Commission, or for the Maritime Commission to take definitive action, was extended to May 19, 1953; that the Maritime Commission neither gave its approval nor took definitive action on the matter by May 19, 1953, whereupon the defendant elected to exercise its right to terminate and did in fact terminate the contract; and that the agreement having been thus terminated at the election of the defendant, there remained nothing upon which plaintiff could predicate its present action.
And by way of counterclaim against plaintiff, defendant asserts the agreement had been terminated as aforesaid; that it had demanded that plaintiff release all claim to the sum of $115,000 deposited in escrow with the bank; that the plaintiff had refused to release the escrow deposit, by reason whereof the defendant had been unjustly deprived of the use of the money, wherefore defendant demanded damages on the counterclaim.
Plaintiff filed a reply denying the material allegations of the separate defenses contained in the answer, and an answer to the counterclaim admitting its refusal to release the fund deposited in escrow and asserting that defendant's failure to obtain the approval and release of the Maritime Commission was due to its own default and breach of its obligations and warranties as more fully set forth above.
In this state of the pleadings, defendant moved for summary judgment in its favor:
"* * * upon the grounds that the contract upon which the claim of plaintiff is predicated was terminated by its own terms and there is therefore no agreement in existence upon which plaintiff can assert a cause of action * * *."
and supported its motion by an affidavit of Peter Moraites, its vice-president, to which was annexed a telegram from the Maritime Commission to the defendant dated May 19, 1953, reading:
*572 "Maritime Administration position unchanged. Approval or disapproval application assumption of mortgage Rosina Marron by Eastern Tankers Seaways Corp still pending. Our further review now in progress."
and to which affidavit was also annexed copy of a letter written by defendant to plaintiff under date of May 19, 1953 formally notifying plaintiff of the failure of the Maritime Commission to take definitive action with respect to defendant's application and defendant's election to terminate the agreement. And the letter further demanded that plaintiff release the escrow fund deposited with the bank as aforesaid.
In defense of the motion plaintiff filed an affidavit by its president, Wiley Butler, substantially repeating the terms of the contract and the allegations contained in its complaint, reply, and answer to counterclaim, and concludes with the statement that the complaint alleges that defendant corporation, at the time or times scheduled for closing of the sale or for obtaining the permission and approval of the Maritime Commission, was not a citizen of the United States and had not met all of the operational and financial requirements of the United States Government and of the Maritime Commission in order to obtain the said approval and release.
Significantly, there are no affirmative allegations either in the defendant's answer or counterclaim, or in the affidavit of its vice-president used in support of the motion for summary judgment, asserting that in fact it was, at the time of the signing of the contract or at any date thereafter, a citizen of the United States within the meaning of the Shipping Act of 1916, or that it had met all of the operational and financial requirements of the United States Government and of the Maritime Commission in order to obtain the approval of the sale and transfer of title to the vessel and of the release of plaintiff as obligor in connection with the said mortgage.
Upon defendant's said motion, an order was entered September 14, 1953 that judgment be entered in favor of defendant and against the plaintiff of no cause for action *573 on the complaint and in favor of defendant and against the plaintiff on the counterclaim and that the action be placed on the calendar for trial on the issue of damages to be assessed in favor of defendant on the counterclaim. From this order for summary judgment plaintiff appeals.
Initially, we observe that the order for summary judgment does not dispose of all of the issues in the case but leaves open for future determination the assessment of damages on the counterclaim. Since the order makes no express determination that there is no just reason for delay nor contains an express direction for the entry of judgment, the order is interlocutory and not final. R.R. 4:55-2. And see Petersen v. Falzarano, 6 N.J. 447 (1951). However, this question was not raised in either the briefs filed or in the oral argument, and inasmuch as the order for summary judgment disposes of all of the controversial legal questions involved in the suit, leaving open only the formality of assessing damages on the counterclaim, as a practical matter we pass to a consideration of the merits of the appeal.
The pertinent provisions of the Shipping Act of 1916, referred to both in the contract upon which this suit is based and in the pleadings of plaintiff, provide in substance that no corporation shall be deemed a citizen of the United States unless the controlling interest is owned by citizens of the United States and unless its president and managing directors are citizens of the United States and unless the corporation is organized under the laws of the United States or of a state, territory, district or possession of the United States. U.S.C.A., Tit. 46, § 802. And that when the United States is at war or during any national emergency declared by proclamation of the President, it shall be unlawful, without first obtaining the approval of the Maritime Commission, to sell or transfer any vessel owned in whole or in part by a citizen of the United States or by a corporation organized under the laws of the United States or of any state, territory, district or possession thereof, to any person not a citizen of the United States. U.S.C.A., Tit. 46, § 835.
*574 The rules provide for the entry of summary judgment only if the pleadings, deposition and admissions on file, together with the affidavits, if any, show palpably that there is no genuine issue as to any material fact challenged and that the moving party is entitled to judgment as a matter of law. R.R. 4:58-3. Of course, the court has no right to make a determination of disputed facts on such a motion. Jersey Insurance Co. of New York v. Altieri, 5 N.J. Super. 577 (Ch. Div. 1949). And in considering such a motion the court should scrutinize with a critical eye the papers of the moving party. Templeton v. Borough of Glen Rock, 11 N.J. Super. 1 (App. Div. 1950). And such a motion by defendant admits not only the well-pleaded facts in plaintiff's complaint and other pleadings, but also all legitimate inferences which may be drawn therefrom. Baldwin Construction Co. v. Essex County Board of Taxation, 24 N.J. Super. 252 (Law Div. 1952), affirmed 27 N.J. Super. 240 (App. Div. 1953); Somerset Crushed Stone, Inc. v. Explosive Sales Co. of N.J., 28 N.J. Super. 210 (App. Div. 1953).
It appears to be undisputed that the Maritime Commission neither approved the proposed sale and transfer of the vessel nor took any definitive action in the matter up to May 19, 1953, on which date defendant gave plaintiff notice of its election to terminate the contract. It is defendant's position that by the terms of paragraph 4 of the contract it had the right to terminate the contract under these circumstances and that it did so by notice to plaintiff on May 19, 1953.
Plaintiff's response to defendant's contention will be found in the second count of the complaint and in plaintiff's separate defenses to the counterclaim. Its position in brief is that in paragraphs 3 and 4 of the contract defendant represented and warranted that it was and would be on the closing date of the sale a citizen of the United States within the meaning of the Shipping Act of 1916; that it would meet all of the operational and financial requirements of the United States Government and of the Maritime Commission *575 in order to obtain the approval of the sale and the release of plaintiff from the mortgage obligation; that plaintiff entered into the contract believing and relying upon said representations and warranties; that in fact the defendant at the time of signing of the contract knew that it was not and would not become a citizen of the United States and knew it would not meet the financial and operational requirements of the United States Government and of the Maritime Commission; that by reason of the falsity of the said representations and warranties of defendant, the latter was unable to obtain the approval of and release from the Maritime Commission; and that failure to obtain the approval of the Maritime Commission was due to the default and breach of warranties by the defendant.
While plaintiff's answering affidavit on the motion for summary judgment does not assert categorically that said representations and warranties were false and that defendant was not a citizen of the United States and had not met the operational and financial requirements of the United States Government and of the Maritime Commission at the date fixed for closing of title under the contract, but merely asserts that it is so alleged in the complaint, yet those matters were at issue by the pleadings and defendant's affidavit used on the motion fails to allege in fact that it was a citizen within the meaning of the Shipping Act of 1916 or that it had in fact met said operational and financial requirements. Under these circumstances it may be said that plaintiff was under no necessity of affirmatively alleging those things inasmuch as defendant's affidavit did not challenge the truth of the allegations of the second count of the complaint. It follows that the matters pleaded in the second count particularly, being admitted for the purpose of the motion and not negated in defendant's affidavit, are to be taken as true. True, the allegations of the second count of the complaint are controverted by defendant's answer, but the pleadings merely serve to put the factual controversy in issue. And we cannot see that the issues raised by the second count of the complaint have been disposed of by the *576 affidavits filed in connection with the motion. There being an issue of fact before the court, a summary judgment should not have been entered but should have been left for trial before a jury.
Defendant's answer pleaded, among other defenses, that by paragraph 14 of the contract sued upon, the parties agreed that any differences arising under the contract should be submitted to arbitration, wherefore defendant says the court is without jurisdiction to entertain this suit by reason of plaintiff's failure to arbitrate. That was not the basis upon which the court ordered summary judgment in this case. However, it may be noted that arbitration was not made a condition precedent by the terms of the contract and that in the absence of a covenant making arbitration a condition precedent, an agreement to arbitrate does not operate to deprive either party of its right to resort to the courts for relief. Sonotone Corporation v. Hayes, 4 N.J. Super. 326, 330 (App. Div. 1949); Rosenthal v. Berman, 14 N.J. Super. 348, 351 (App. Div. 1951).
Defendant's answer also sets up by way of defense that by the terms of paragraph 4 of the contract sued upon it was agreed that if the buyer (defendant) did not obtain approval of the proposed sale and transfer, and proposed release of the plaintiff from the obligation of its bond in connection with the mortgage, or if the Maritime Commission had not taken definitive action by April 8, 1953, extended by agreement to May 19, 1953, then in either event either party might terminate the agreement and that the agreement was terminated by the defendant on May 19, 1953 in accordance with those provisions of the contract so that no agreement remains upon which the plaintiff could predicate the present suit. The answer to that defense will be found in the second count of the complaint; in plaintiff's separate defenses to the counterclaim; and in plaintiff's answering affidavit on the motion for summary judgment. In effect, plaintiff says that defendant itself made it impossible for the Maritime Commission to give its approval to the proposed sale because, in breach of its expressed warranties contained *577 in paragraphs 3 and 4 of the contract, defendant was not a citizen of the United States within the meaning of the Shipping Act of 1916 as it warranted by the contract it was and would continue to be and that defendant had not met the operational and financial requirements of the Maritime Commission as it warranted by its contract that it would, thus making it impossible to obtain the approval of the Maritime Commission and that, therefore, defendant's failure to obtain the approval of the Maritime Commission was brought about by defendant's own default and breach of its covenants and warranties. It is well established as a principle of fundamental justice that if a promisor prevents or hinders the occurrence or fulfillment of a condition in a contract, and the condition would have occurred or would have been fulfilled except for such hindrance or prevention on the part of the promisor, then the performance of the condition is excused and the liability of the promisor is fixed regardless of failure to fulfill the condition. Restatement, Contracts, §§ 294 and 295; Williston on Contracts (rev. ed.), §§ 676 and 677; 12 Am. Jur., Contracts, § 329; 17 C.J.S., Contracts, § 468 (b). The principles enunciated in the foregoing texts have been consistently upheld by the courts of this State. Hinds v. Henry, 36 N.J.L. 328 (Sup. Ct. 1873); Rauchwanger v. Katzin, 82 N.J.L. 339 (Sup. Ct. 1912); Wegmann v. Melniczak, 133 N.J.L. 243 (Sup. Ct. 1945); Keifhaber v. Yannelli, 9 N.J. Super. 139 (App. Div. 1950); Marschalk v. Weber, 11 N.J. Super. 16 (App. Div. 1950); Cohen v. Scola, 13 N.J. Super. 472 (App. Div. 1951); Alexander Summer Co. v. Weil, 16 N.J. Super. 94 (App. Div. 1951); Alnor Construction Co. v. Herchet, 10 N.J. 246 (1952).
And in 6 Corbin on Contracts 48, the author states:
"A party who has reserved a power of termination loses that power if he himself commits such a breach as goes to the essence and discharges the other party. A subsequent notice of termination has no effect upon the other party's right to full damages for the existing total breach."
*578 In our view of this case, there are disputed factual issues requiring consideration by a jury nor do we think it clearly appears that the defendant was entitled to judgment as a matter of law.
The order for summary judgment is reversed.