Frank HAM, Estil Nichols and Jerry M. Franklin, Appellants,

v.

Ronald WENNEKER and Carolyn Wenneker, Respondents.

No. WD 34093.

Missouri Court of Appeals, Western District.

Oct. 11, 1983.

James C. Butcher, Columbia, for appellants; Butcher, Cline, Mallory & Covington, Columbia, of counsel.

Robert Hines, Columbia, for respondents; Rear, Hines & Thomas, Columbia, of counsel.

Before TURNAGE, P.J., and PRITCHARD and KENNEDY, JJ.

PRITCHARD, Judge.

The remaining plaintiff and sole appellant herein, Frank Ham, sued respondents, Wenneker, for recovery upon a promissory note given him for real estate commissions earned in the amount of $4,879.15, with 5½% interest per annum. Respondents' counterclaim was dismissed with prejudice.

The note, dated January ____, 1978, given by Wennekers to Ham, provides that they should pay the $4,879.15 with the interest on the unpaid balance on December 1 of each year until maturity, "with the entire unpaid balance of principal and interest being due and payable three (3) years from date; *provided however, not withstanding the foregoing, the aforesaid principal and interest payments shall not be due until payment or payments are hereafter made on the One Hundred Seventy Thousand Dollar ($170,000.00) Promissory Note executed by CALVIN L. STEE made payable to DON L. HOPKINS dated November 30, 1977, * * *.*" [Italics added.] The note goes on to say that the makers, etc., severally waive presentment for payment, notice of nonpayment, protest and notice of protest, and diligence in bringing suit, extension of time for payment without notice, and that if the note is placed in the hands of an attorney for collection to pay the costs of collection including a reasonable attorney's fee if collected by an attorney or by process of law.

The Stee note was made payable to Don L. Hopkins who assigned it to one George Lesko under an endorsement with recourse or a guaranty of payment restricted to George Lesko only. The Stee note, acquired by the Wennekers under circumstances hereinafter set forth, provided that it was secured by Tract 6–L, Laura E. Munday Survey A–233, Westway Addition, El Paso County, Texas [stipulated as consisting of 37.2 acres]. It was dated November 30, 1977, and the principal was to be paid in 20 equal annual installments, plus annual interest, of $8,500.00 each, the first payment to be due on the same day of each succeeding year until paid in full. It was stipulated that Stee had made no payments of principal or interest on his note to the Wennekers while they held it, nor were any such payments made to Robert and Betty Harsh, the Wennekers' assignees *without recourse,* as of April 22, 1981 (the date the cause was submitted on stipulation to the trial court).

The history of land purchases and sales culminating in the transfer of the Stee note to the Harshes is this: On September 15, 1977, Wenneker bought the Brinc building in Sedalia, Missouri, for $175,000. Estil Nichols, an original plaintiff in this action, represented Wenneker in that purchase.

In December, 1977, Wenneker sold the Brinc building to George Lesko, taking the $170,000 Stee note on Lesko's assignment in which Lesko agreed with Wenneker that in the event of default in its payment he would on demand made by Wenneker or his assigns exercise all rights of recourse which he had against Don L. Hopkins to collect the balance due on the notes. Besides the

conveyance of the Brinc building Wenneker also conveyed 85 acres in Macon County "free and clear"; three lots in Columbia; one lot in Bunceton; and one in Pilot Grove to Lesko. Lesko assumed two notes of Wenneker, $98,000 and $59,000, secured respectively by first and second deeds of trust on the Brinc building.

In March, 1978, Wenneker assigned the Stee note to Harsh, in exchange for three tracts of land, without recourse, as stipulated. Attached to Exhibit C–2 (Lesko's endorsement to Wenneker) is this notation: "Without recourse to the undersigned, without representation or warranty of any kind either express or implied in fact or in law, the undersigned hereby assigns this Promissory note to the holder thereof. (Signed) Ronald R. Wenneker." The closing statements recite that the Harsh three tracts had these sale prices: 160 acres, $152,000; 80 acres, $84,000; and 120 acres, $70,000, a total of $306,000. There were encumbrance notes respectively on the three tracts in these amounts: 160 acres, $72,800-accrued interest, $389.00; 80 acres, $30,672-accrued interest, $217.26; and 120 acres, $24,500-accrued interest, $2,021.25, a total of principal and interest in the amount of $130,599.51. On these figures, this computes as a net equity in the properties of $175,400.49. The Stee note was recited to have accrued interest of $2,793.16, and the closing statement recites that $7,500 commission was paid direct, Wenneker's testimony being that he paid it and some back taxes on the 120 acre tract in an unspecified amount. It thus appears that the net consideration to the Wennekers was about $4,892.67 less than the principal and interest of their Stee note assigned to Harshes, and the commission paid by the Wennekers.

Although Wenneker testified at trial that the Harsh properties were actually worth about one-half of the recited selling price, and that he believed he received only about $18,000 net for the transfer of the Stee note, the contract prices would seem to be the more reasonable. Besides, there is no issue presented as to the lack of or inadequacy of the consideration received for the note. It is clear, at least, that the Wennek-

ers received something for their voluntary assignment without recourse of the Stee note to the Harshes. Wenneker's receipt of consideration, or inadequacy thereof, is irrelevant to Ham's claim on his note.

It is the contention of the Wennekers that even after they assigned the Stee note, they have the right to insist upon the condition of payment by Stee on his note before they are liable to Ham on his commission note, regardless of whom would be entitled to receive Stee's payments. By their assignment to Harshes, the Wennekers have relieved themselves of liability of any recourse on the note by reason of any subsequent nonpayment by Stee. Furthermore, the Wennekers, by the assignment, without recourse, to Harshes, have relieved themselves of any personal right to require Stee to make payments on his note to them personally—his obligation to pay was thereafter to the holders of his note. The condition in Ham's note was obviously for the benefit of the Wennekers solely, and by their own act of assignment of the Stee note, they have prevented the performance or caused the nonperformance of the condition of Stee's payment to them. Under these circumstances there was no longer any vitality to the condition in Ham's note, and the nonperformance of that condition by Stee, as to the Wennekers, is not a defense to Ham's suit on his commission note. The Wennekers, of course, had a right to insist upon the condition of payment to them by Stee before they would be liable to Ham on his note, *so long as they held Stee's note,* but since they assigned Stee's note, they thereafter lost the right so to insist.

Even if the provision in the Wenneker note to Ham either be regarded as a true condition precedent of payment or merely a provision for the time of payment, Wenneker has by his conduct-the assignment without recourse of the Stee note-prevented or rendered its performance impossible *as to the Wennekers.* The general rule is stated in 17 Am.Jur.2d Contracts, Sec. 427, p. 882, "One who prevents or makes impossible the performance or happening of a condition

precedent upon which his liability by the terms of a contract is made to depend cannot avail himself of its nonperformance. Even more broadly, where a promisor prevents or hinders the occurrence, happening, or fulfilment of a condition in a contract, and the condition would have occurred except for such hindrance or prevention, the performance of the condition is excused and the liability of the promisor is fixed regardless of the failure to perform the condition." No case has been found which is precisely in point on facts like those here, i.e., that the seller's obligation to pay a note given for a real estate commission was conditioned upon the payment or payments to him of a note owed to him by a third party, which note he assigns "without recourse". There are, however, analogous situations where performance of conditions have been excused because of acts of the promisor have prevented the performance. In *Spitcaufsky v. Guignon*, 321 S.W.2d 481 (Mo.1959), there was an agreement that Guignons would receive a broker's commission if they obtained sufficient and adequate financing to construct a building and facilities suitable to the tenant, which turned out to be A & P. The financing was acquired from New England Mutual Life Insurance Company, but no money was to be advanced by it until after the building had been completed, occupied and accepted by A & P. Thereafter Spitcaufsky then refused to proceed with the project because the available financing was not enough for additional items which she insisted on including in the contract. It was held that the Guignons were entitled to their earned commission because Spitcaufsky's own acts prevented the completion of the building, the analogous governing rules being set forth at page 487[1–3] of the Spitcaufsky opinion. In *Weniger v. Union Center Plaza Associates*, 387 F.Supp. 849 (D.C.S.D.N.Y.1974), the right of a broker to a commission was conditioned upon the procuring of a loan commitment, which was done, but the lenders terminated the commitment because defendants failed or refused to make "good faith deposits" thereunder. The court, at pages 863 and 864, cited extensively from New York cases holding that even where the broker and seller expressly provide that there shall be no right to a commission unless some condition is fulfilled, and the condition is not performed, the seller will nevertheless be liable if he is responsible for the failure to perform the condition. The court held at page 864 that defendants' conduct caused the failure of the loan commitment, and they failed to consummate the permanent mortgage loan procured by Weniger, and that being the case, they could not invoke the condition precedent in the agreement as a bar to his claim. See further the there emphasized case of *Lane-The Real Estate Department Store v. Lawlet Corp., et al.,* 28 N.Y.2d 36, 319 N.Y.S.2d 836, 841, 268 N.E.2d 635, 639 (1971); *Oil Trading Associates, Inc. v. Texas City Refining, Inc.,* 201 F.Supp. 846, 851 (D.C.S.D.N.Y.1962); and *Coastal Oil Co. v. Eastern Tankers Seaways Corp.,* 29 N.J.Super. 565, 103 A.2d 26, 32 (1954). Note also *Porterfield v. American Surety Co. of New York*, 201 Mo.App. 8, 210 S.W. 119 (1919), where a broker's commission on a performance bond issued in connection with the construction of the State Capitol was based upon the original premium and all renewal premiums, received by the surety company "as long as this bond remains in force." Although the bond continued in force for a succeeding year, the surety company voluntarily waived the payment of premiums during that time, and claimed that it was not liable to the broker because no receipt of premiums was had by it. The court said, page 124, that there was a failure to make out the pleaded defenses because defendant did not see fit to enforce the contract (to pay premiums) which the broker's services obtained for it, and the plaintiff was entitled to a directed verdict.

It is unnecessary to pursue the line of cases holding that a provision for the payment of an obligation out of a specific fund, or from a third party, may create only a time for payment and not a condition precedent. See, e.g., *Stitt v. Royal Park Fashions, Inc.,* 546 S.W.2d 924 (Tex.Civ.App. 1979); *Mignot v. Parkhill,* 237 Or. 450, 391 P.2d 755 (1964); *Noord v. Downs, 51*

Wash.2d 611, 320 P.2d 632 (1958); and Anno. 148 ALR 1075. This for the reason, as noted, that Wenneker, by assigning the Stee note without recourse, in March, 1978, put it beyond his power to demand or receive payment or payments from Stee. The condition in the note to Ham therefor became excused, and the Wennekers became liable to pay it on its due date in December, 1981.

The judgment is reversed and the case is remanded with directions that a new judgment in favor of Ham against Wennekers be entered for the principal, $4,879.15; for interest to be computed to the date of the new judgment; and for further proceedings to ascertain the collection costs and a reasonable attorney's fee in accordance with the provision therefor contained in the note. To hold otherwise, as the Wennekers contend, would result in a forfeiture of Ham's right to collect on his note given for his commission which was clearly earned.

All concur.