Mark L. STOCKTON, Appellant
(Defendant),

v.

E.O. SOWERWINE, III,
Appellee (Plaintiff).

No. 84–25.

Supreme Court of Wyoming.

Nov. 21, 1984.

Lawrence A. Yonkee of Redle, Yonkee & Arney, Sheridan, for appellant.

Lawrence B. Cozzens, Billings, Mont., for appellee.

Before ROONEY, C.J., and THOMAS, ROSE, BROWN and CARDINE, JJ.

BROWN, Justice.

This appeal involves the question of an implied covenant of good faith in an option contract to repurchase certain real estate. The trial court found that appellant Mark L. Stockton (Stockton hereinafter) had exhibited bad faith in hindering appellee E.O. Sowerwine, III (Sowerwine hereinafter) in the exercise of his option to repurchase the land, and ordered specific performance of the contract.

Appellant Stockton raises the following issues:

"Where the Plaintiff was unable to obtain funds necessary to exercise an option within the time stated and in the manner prescribed,

"(1) Did the Defendant's refusal to perform acts which were not required by the

option contract until after it was exercised constitute hindrances which excused the Plaintiff's failure to perform?

"(2) Was the nonperforming Plaintiff entitled to specific performance where the evidence does not establish that this performance would have occurred except for hindrance and prevention by the Defendant?

"(3) Did the option contract prescribe a single and exclusive mode of accepting the Defendant's offer to sell 1,505 acres out of a parcel containing 1,510 acres?

"(4) If the option was to be exercised within a stated time and in a particular manner, must that have been done by the Plaintiff exactly as prescribed in the written agreement?

"(5) Was time of the essence in exercising the option granted by the Defendant?

"(6) Did the Plaintiff's rights expire when he failed to exercise the option in the manner prescribed and within the time stated in the contract?"

We will affirm.

Before June, 1981, appellee's father, E.O. Sowerwine, Jr., owned the property subject to this lawsuit. He had numerous financial problems and in order to save his ranch, was provided $300,000 from Stockton to discharge pressing obligations. Upon receiving the $300,000 from Stockton, appellee's father deeded to Stockton 1,510 acres of the ranch with a one-year option to repurchase 1,505 acres as set forth in an Agreement and Option to Repurchase, dated June 15, 1981. The parties agreed that upon exercise of the option Stockton could keep five acres of his choice from the 1,510 acres. The action arose after Sowerwine alleged that Stockton wrongfully hindered him in the exercise of the option. The trial court found generally for Sowerwine, stating that:

"* * * Defendant's [appellant's] actions display a conscious, methodical obstructive course of action towards the Plaintiff [appellee] and his attempts to exercise the option and such actions resulted in the actual hindrance of the Plaintiff."

The option to repurchase ran for one year until June 22, 1982, and required that appellee's father tender to Stockton the amount of $303,000, the original purchase price plus the "points" which were paid by Stockton to obtain his loan from the bank, together with interest at the rate of 19%, in addition to all expenses incurred by Stockton relating to his ownership of the property, plus $20,000. There was evidence indicating that the property's value was in excess of $1,000,000. Also, Stockton had the right to retain five acres of the property. On April 1, 1982, appellee's father had not yet obtained refinancing, and at that time the option was assigned to appellee.

In the following months, Sowerwine applied to the Federal Land Bank of Omaha for a loan to obtain refinancing. The Federal Land Bank issued a notice of loan approval on June 9, 1982. The following day, June 10, 1982, Sowerwine wrote Stockton of his intent to exercise the option. This letter was received by Stockton on June 12, 1982. On June 11, 1982, Sowerwine requested a list of the expenses incurred by Stockton, as well as a legal description of the five acres that Stockton desired to retain, in order to close the 'oan with the Federal Land Bank of Omaha. Stockton refused to provide Sowerwine with the list of expenses and the legal description of the five acres which Stockton desired to retain. On June 12, 1982, Stockton told Sowerwine that he could not provide a legal description because he did not know which five acres he wanted to retain. However, Paul Campbell, a surveyor in Cody, Wyoming, testified that he had been contacted by Stockton in the summer of 1981 and again in June of 1982; Stockton had told him which five acres of the property he wished to retain, and discussed the possibility of having those five acres surveyed. Also, on June 12, 1982, Stockton and his counsel told Sowerwine, who did not have an attorney with him, that the option was not assignable and that he, Sowerwine, could not exercise such option. At trial, however, both Stockton and his counsel admitted that both assertions were incorrect.

Since Stockton refused to give a legal description of the five acres which he wished to retain, and since the closing date of June 22, 1982, was approaching, Sowerwine sought interim financing at the Stockgrowers State Bank in Worland, Wyoming, among others. Sowerwine's application for the loan was considered by the bank's discount committee on June 15, 1982. One day earlier Stockton, also a bank president, wrote a letter to the president of the Stockgrowers State Bank, wherein he informed the bank of the existence of certain restrictive covenants upon the land, averred that he did not see how the Federal Land Bank could make a loan on land which was restricted, and suggested that the president call the Land Bank to discuss this issue. This letter was not mailed, but was hand delivered after Stockton drove 90 miles to do so. The discount committee of the Stockgrowers State Bank considered Sowerwine's loan application on June 15, 1982, and rejected it. The rejection was based, in large part, upon Stockton's letter to the bank regarding the existence of the covenants. The minutes of the discount committee reflect:

> "* * * Because of a covenance [sic], there is to be no livestock on the land and if this is the case, then the Federal Land Bank won't loan the money. Stockton will give back the sprinkler system if Sauerwine [sic] will release the covenance [sic]. Son wants land to add to his 465 acres. No we are not interested."

At trial the president of Stockgrowers State Bank and the loan officer in charge of Sowerwine's application testified that the existence of the restrictive covenants was a major factor in their refusal to grant the loan to Sowerwine.[1]

The facts show that on the last day the option could be exercised, June 22, 1982, the Federal Land Bank was ready to close its loan and grant the money to Sowerwine just as soon as it received a complete legal description of the property. This could not

be done since Stockton refused to furnish Sowerwine a legal description of the five acres which he wished to retain. Sowerwine had deposited sufficient money in the Stockgrowers State Bank to cover any excess of the repurchase price over the loan amount and to cover any expenses incurred by Stockton incidental to his ownership of the property, including the expense of surveying the five acres. However, Stockton still refused to provide Sowerwine with an itemized list of expenses, even though such list had been prepared since June 16, 1982. The list was not given to Sowerwine until the option period had expired.

The trial court found that Stockton had intentionally violated the implied covenant of good faith in his hindrance of Sowerwine's attempt to validly exercise his option under the contract, specifically holding:

> "1. While the Defendant may not have known that Plaintiff had applied for a bridge loan at Stockgrowers State Bank at the time he wrote and delivered the June 14th letter, it still evinces an intent to hinder the Plaintiff by his suggestion that the bank contact the Federal Land Bank about the covenants. Although Stockgrowers State Bank did not contact the Federal Land Bank about the covenants, Defendant was successful in hindering the Plaintiff through the Stockgrowers State Bank's use of the information and the part it played in the Bank's denial of the bridge loan.
>
> "2. The intent of the Defendant is further shown by his refusal to accept the assignment of the option and his failure to provide a list of expenses after being asked to do so, especially since such a list had been prepared by the Defendant.
>
> "3. The actions of the Defendant, taken singly, may appear justified and consistent with the actions of an individual protecting his own interests. But when considered as a whole, Defendant's actions display a conscious, methodical obstructive course of action towards the Plain-

---

1. It should be noted that the Sowerwine family could release the covenants at any time, so a problem with the covenants never existed.

tiff and his attempts to exercise the option and such actions resulted in the actual hinderance of the Plaintiff.

"4. Plaintiff has established sufficient equitable grounds to excuse his failure to timely exercise his option and he is entitled to equitable relief from this Court."

In his treatise on contracts, Professor Williston states:

"It is a principle of fundamental justice that if a promisor is himself the cause of the failure of performance, either of an obligation due him or of a condition upon which his own liability depends, he cannot take advantage of the failure.

"In reflecting upon this jural proposition, a federal court has observed that 'Where liability under a contract depends upon a condition precedent one cannot avoid his liability by making the performance of the condition precedent impossible, or by preventing it.' The illustrations of this principle are legion." 5 Williston on Contracts, § 677, pp. 224–225 (3rd ed. 1961).

The above language was quoted with approval by this court in *Gibson v. J.T. Allen Agency*, Wyo., 407 P.2d 708, 710 (1965):

" * * * 'One who prevents or makes impossible the performance or happening of a condition precedent upon which his liability by the terms of a contract is made to depend cannot avail himself of its nonperformance.' " See also 17 Am.Jur.2d, Contracts, § 427, p. 882 (1964).

Referring again to Williston on Contracts, § 677A, it is stated:

"It is as effective an excuse of performance of a condition that the promisor has hindered performance as that he has actually prevented it. * * * Where a party stipulates that another shall do a certain thing, he thereby impliedly promises that he will himself do nothing which will hinder or obstruct that other in doing that thing.

"And if the situation is such that the cooperation of one party is an essential prerequisite to performance by the other, there is not only a condition implied in fact qualifying the promise of the latter,

but also an implied promise by the former to give the necessary cooperation."

The court in *Coastal Oil Co. v. Eastern Tankers Seaways Corp.*, 29 N.J.Super. 565, 103 A.2d 26, 32 (1954), stated the rule succinctly:

" * * * It is well established as a principle of fundamental justice that if a promisor prevents or hinders the occurrence or fulfillment of a condition in a contract, and the condition would have occurred or would have been fulfilled except for such hindrance or prevention on the part of the promisor, then the performance of the condition is excused and the liability of the promisor is fixed regardless of failure to fulfill the condition. [Citations.] "

This court has previously dealt with the issue of good faith in its relation to real estate contracts in *Wendling v. Cundall*, Wyo., 568 P.2d 888, 890 (1977):

" * * * The Uniform Commercial Code as adopted in Wyoming, § 34–1–101 et seq., W.S., would not encompass this transaction relating to real estate. The legislature did, however, define 'good faith' as those terms would apply to most other commercial transactions conducted by persons owing no fiduciary or other special obligation to one another. Pursuant to § 34–1–201(19), W.S., ' "Good faith" means honesty in fact in the conduct or transaction concerned.' * * * Absent some compelling reason, which is not present here, it is appropriate to have a similar definition of good faith applicable to transactions like this as pertains to those governed by the Uniform Commercial Code and the law merchant. We subscribe to the proposition that this test requires honesty of intent rather than diligence or nonnegligence. * * * "

■ Our scope of appellate review is to assume the evidence in favor of the successful party is true, omitting entirely the consideration of evidence presented by the unsuccessful party which conflicts with the successful party's evidence, giving every favorable inference that may fairly and reasonably be drawn from the successful

party's evidence. *City of Rock Springs v. Police Protection Association*, Wyo., 610 P.2d 975 (1980); and *Madrid v. Norton*, Wyo., 596 P.2d 1108 (1979). This court cannot substitute its judgment for that of the trial court made on evidentiary matters unless it is clearly erroneous or against the great weight of the evidence. *Doenz v. Garber*, Wyo., 665 P.2d 932 (1983); and *Seeley v. Estate of Seeley*, Wyo., 627 P.2d 1357 (1981).

 Applying those principles to the present case, we find that the record is replete with examples of Stockton's attempts to hinder Sowerwine's exercise of the option. Indeed, Stockton's attorney admitted that Stockton did not want the option to be exercised. Such intent is manifest through his attempt to block the interim financing which Sowerwine had applied for through the Stockgrowers State Bank, as well as his refusal to give Sowerwine a description of the five acres which he intended to retain, even though he had previ-

ously contacted a surveyor and told him the acres he wanted surveyed which he wished to retain.[2] Furthermore, Stockton's intent is evidenced by his refusal to give Sowerwine an itemized list of expenses which Stockton had incurred incident to his ownership of the property which was needed to determine the repurchase price, even though such list had already been prepared.

In this case we find that the trial court was justified in concluding that Stockton had purposely hindered Sowerwine in his attempts to rightfully exercise his option under the contract.

Affirmed.

2. Under the option to repurchase Stockton technically had five days after the exercise of the option to provide Sowerwine with a description of the five acres he wished to retain. However, Stockton knew that Sowerwine needed the description to close the loan of the Federal Land Bank and that Sowerwine would pay for the expense of having the five acres surveyed out of money already deposited with the Stockgrowers State Bank. Knowing this, Stockton still refused to provide the legal description, a further example of his intent to hinder the exercise of the option.