206 N.J. Super. 318 (1985)
502 A.2d 1137
ALLSTATE REDEVELOPMENT CORPORATION, A NEW JERSEY CORPORATION, PLAINTIFF-APPELLANT,
v.
SUMMIT ASSOCIATES, INC., A NEW JERSEY CORPORATION, DIEGO R. VISCEGLIA AND PETER H. COOK, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted September 25, 1985.
Decided November 25, 1985.
*319 Before Judges O'BRIEN and SCALERA.
Franzblau, Falkin & Goldman, P.A., attorneys for appellant (Frederic C. Ritger, Jr., on the brief).
Crummy, Del Deo, Dolan & Purcell, P.C., attorneys for respondents (Frederick C. Kentz, III, on the brief).
The opinion of the court was delivered by O'BRIEN, J.A.D.
Plaintiff Allstate Redevelopment Corporation (Allstate) appeals from a summary judgment dismissing its complaint against defendant Summit Associates, Inc. (Summit). At issue in this case is the nonperformance by plaintiff-lessee of a condition precedent in a commercial lease agreement allegedly caused by defendant-lessor's bad-faith failure to disclose a material fact. We hold that plaintiff sufficiently raised the issue of defendant's bad faith to preclude summary judgment, and therefore reverse and remand.
On January 14, 1977, Allstate entered into a lease with Summit, under the terms of which Allstate leased approximately 25 acres of vacant land in North Bergen owned by Summit, beginning on January 1, 1977 and ending on June 30, 1982, to be used by Allstate as a "dump site for non-organic materials and wood derived from the demolition of buildings and other structures." The parties agree that it was intended that the premises would be filled in a manner so as to be suitable for the erection of a building or buildings. In connection with that purpose, paragraph 38th of the lease required Allstate to submit to Summit a report prepared by Allstate's engineers indicating in detail the procedures which Allstate planned to follow in filling the demised premises with demolition material. It further authorized Summit, at Allstate's expense, to retain a firm to perform preliminary subsurface investigations. The paragraph further authorized Summit to terminate the lease after receipt of the engineering data if, in Summit's opinion or in the *320 opinion of its engineers, the method of filling and suggested elevation interferes with Summit's proposed development of the demised premises after the filling has been completed, or if the subsurface report reveals that the costs for necessary site preparation for building construction will be increased by Allstate's use.
The clause in the lease upon which the court granted summary judgment reads as follows:
39th. The Tenant shall obtain on or before the expiration of the 4 month period set forth in paragraph 38th hereof any and all necessary permits and approvals required to permit the proposed use from any governmental unit having jurisdiction over the demised premises, said governmental units to include but not be limited to the Township of North Bergen, the Hackensack Meadowlands Development Authority, Hudson County, the State of New Jersey, and the United States of America until all such permits and approvals are obtained. If the necessary permits and approvals have not been obtained by said date, the time to obtain said permits and approvals shall be automatically extended from month-to-month, subject, however, to the right of either Landlord or Tenant to terminate said automatic extensions by thirty (30) days advance written notice to the other. If on the last day for obtaining permits and approvals, all necessary permits and approvals have not been obtained, this lease shall terminate and have no further force or effect and all of the security deposits not needed to satisfy the tenant's obligations hereunder shall be returned to the tenant. During any extension period for obtaining the necessary governmental permits and approvals, rent shall accrue and be payable by the tenant hereunder notwithstanding that said permits and approvals have not yet been obtained.
Pursuant to its obligation, Allstate began applying for the necessary permits. When Allstate's attorney applied to the New Jersey Department of Environmental Protection, he learned of an outstanding riparian claim by the State of New Jersey against the premises, and that no permits could be granted until that claim was resolved.
According to an affidavit filed by general counsel for Summit, the premises in question are located in the Hackensack Meadowlands District and portions thereof have been claimed by the State of New Jersey as riparian since 1970. Summit has been involved in negotiations and litigation over the State's claim since 1971 and had retained special counsel to litigate the matter on its behalf. In his affidavit, general counsel admitted *321 that "as a result of the State's claim indicating that portions of this property are owned by the State, we have been unable to develop or use this property in any manner until those claims have been resolved." A potential settlement with the State was thwarted because of a change in administration and the appointment of a new attorney general.
The principals of Allstate certified that they were not aware of the existence of the riparian claim of the State of New Jersey at the time the lease was executed. Upon learning of the existence of this claim, Allstate was repeatedly assured that the claim was in the process of settlement and that it would not interfere with the project. Suggestions by Allstate that its representatives take part in an effort to clear up the riparian claim were rejected by Summit. In appearances before the Hackensack Meadowlands Development Commission (HMDC), attorneys for Summit testified as to the potential settlement of the claim. According to representatives of Allstate, they were assured by Summit that they would be able to commence their operation in just a few months and that the riparian claim did not represent any significant problem.
By letter of March 17, 1980, Summit exercised its right to terminate the lease under paragraph 39th, contending that, while a report of HMDC purports to permit the proposed demolition landfill:
various comments disclaiming approval of the fill for building purposes, requiring possible additional site preparation in the future and varying the percentages of organics and/or wood in accordance with building areas, parking areas and lawn areas yet at the same time withholding any approval of the denomination of those areas create an impossible situation.
Attached to that letter was a statement of charges allegedly due from Allstate to Summit totaling $194,807.83, but giving credit to Allstate for the $10,000 security deposit made pursuant to paragraph 31st of the lease.
On December 10, 1981, Allstate filed a complaint against Summit, Diego R. Visceglia, one of Summit's corporate officers, and Peter H. Cook, general counsel of Summit. This appeal is *322 from the dismissal of that complaint. In the first count of the complaint, Allstate sought compensatory and punitive damages and to impose a lien upon the premises for the amount found to be due, alleging breach of contract. The second count charged a conspiracy between Visceglia and Cook to cause the contract between Allstate and Summit to be breached. Summit filed an answer and a counterclaim seeking damages for Allstate's alleged breach of the lease agreement, and a third-party complaint against Frank Capuano, who allegedly entered into an agreement in writing to guarantee performance of Allstate's obligations under the lease. The trial judge granted summary judgment in favor of Summit and dismissed both counts of the complaint by order dated November 18, 1983.[1] Notice of appeal was filed on December 13, 1983. Thereafter the parties agreed to the entry of a consent order on January 4, 1984, dismissing the counterclaim and third-party complaint without prejudice.[2]
In his letter opinion of March 16, 1984, the trial judge reasons that Allstate was obligated to obtain the necessary permits and approvals which had not been secured at the time Summit exercised its right to terminate under paragraph 39th. The judge concluded that because a condition precedent had not been satisfied, Allstate had no enforceable contractual rights under the lease agreement. The judge relied upon our opinion in State Farm Mutual Automobile Ins. Co. v. Anderson, 70 N.J. Super. 520, 527 (App.Div. 1961), and also cited Duff v. Trenton Beverage Co., 4 N.J. 595, 604 (1950), for the proposition that "[g]enerally, no liability can arise on a promise subject *323 to a condition precedent until the condition is met." On this appeal, Summit also relies upon Duff for the proposition that:
The parties may make contractual liability dependent upon the performance of a condition precedent; and where the performance of the condition made vital to the existence of the contract is impossible as in violation of public policy, a contractual obligation does not come into being. [at 604]
Application of the stated principles depends upon a resolution of the facts. In its brief filed in the trial court in support of its motion for summary judgment, Summit argued that the lease could not possibly have been performed, stating:
In addition to the impossibility of performance of this lease agreement due to the State's riparian claims there was the additional inability to obtain all of the necessary State and governmental permits within the time prescribed by the lease.
This recognition of the impossibility of performance of the lease by Summit creates a factual matter in dispute between the parties sufficient to preclude the grant of summary judgment. Nowhere in the lease agreement is there any reference to the riparian claim of the State. Yet Summit conceded that the premises could not be used until that claim was resolved. In face of this fact, it appears that Summit entered into a lease agreement with Allstate, under which Summit's obligation to perform was conditioned upon an event which it knew was impossible or almost impossible to occur. Yet, Summit failed to inform Allstate of this virtual impossibility, and when Allstate learned of it during the course of pursuing its obligation to obtain the necessary permits and approvals, Summit assured Allstate that the claim would be resolved.
Allstate contends that it invested substantial sums of money in heavy equipment and accessories and spent a considerable amount of time in organizing their operation. As noted under the terms of the agreement, Allstate was required to obtain the services of an engineer to draw plans and specifications as to how the work would progress and also to pay for the subsurface investigation to be performed by Summit's representative. All of these expenditures by Allstate were based upon the assumption that permits to perform the work were obtainable. *324 By its complaint, Allstate sought to recover for these damages, alleging breach of contract by Summit.
The decision by the trial judge (i.e., that Allstate failed to satisfy a condition precedent, thereby relieving Summit of its duty to perform under the contract) misses the point. Although it is settled law, upon which the trial judge relied, that generally, "no liability can arise on a promise subject to a condition precedent until the condition is met," Duff v. Trenton Beverage Co., supra, at 604 there are exceptions to this rule where nonperformance of the condition precedent is excused, thereby requiring the obligor to perform. See Restatement (Second) of Contracts, § 225 (1982). A condition precedent may be excused where its performance is prevented or hindered by a breach of the obligor's duty of good faith and fair dealing. See Atlas Trading Corp. v. S.H. Grossman, Inc., 169 F.2d 240 (3rd Cir.1948), where a defendant obligor asserted he was not obliged to perform under a contract because plaintiff failed to satisfy an express condition precedent, i.e., securing certain government permits. Nevertheless, the Court, applying New Jersey law, ruled that nonoccurrence of the condition precedent was excused because defendant itself, by submitting bids for the same permits, knew or should have known that such conduct would likely prevent plaintiff from securing the permits. Although in the cited case the conduct of defendant was affirmative, here Summit knew that the riparian claim of the State rendered use of the premises impossible and it is claimed would probably prevent Allstate from obtaining the required permits. See 84 A.L.R.2d 31, § 5. Williston states that existing impossibility known to one party and not to the other would probably render the transaction voidable for fraud. 6 Williston, Contracts (Rev.Ed.), § 1933.
The two cases cited by our Supreme Court in Duff v. Trenton Beverage Co., supra, and relied upon by Summit on this appeal are distinguishable. In Anglo Russian Merchant Traders v. John Batt & Co., 2 K.B. 679 (1917), a seller and buyer executed a contract for the sale of aluminum and both parties knew that *325 export of this product was prohibited unless licensed by the government. Thus the government license was an implied condition precedent to the contract. The seller, being unable to secure the government license, was nevertheless adjudged not liable on the contract because his implied obligation was only to use his best efforts to secure the license. In that case both parties acted on equal footing and in good faith. Similarly, in McKenna v. McKenna, 15 Can.S.Ct. 311 (1888), both parties knew that their contract could not be performed unless the government reinstated its contract with defendant. When defendant failed to procure the government contract, the court found defendant not liable on its subcontract with plaintiff because nonfulfillment of the condition precedent "... happened without fault on either side." See Duff, 4 N.J. at 607.
When the parties are not on equal footing and one has acted in bad faith, that party will not escape liability on a contract even though the other party has failed to satisfy a condition precedent. In Apfelbaum v. Topf, 104 N.J.L. 343 (Sup.Ct. 1928), the Court held that a broker, whose commission was expressly contingent upon passage of title to the purchaser, was not entitled to that commission when title fails to pass due to a defect "... unless it is made to appear that the vendor when he entered into the contract with the real estate broker, fraudulently concealed the fact of the existence of the restrictions on the property." Id. at 346. Similarly, in Coastal Oil Co. v. Eastern Tankers Seaways Corp., 29 N.J. Super. 565 (App.Div. 1954), a contract for the sale of an oil tanker was expressly conditioned upon approval of the sale by the Maritime Commission, which required, among other things, that both parties be U.S. citizens.[3] Defendant corporation was not a U.S. citizen, as *326 it represented, and this fact precluded it from securing the necessary approval of the sale from the Maritime Commission. Thereafter defendant sought to avoid liability on the contract, arguing nonfulfillment of a condition precedent. We reversed the trial court's order for summary judgment in favor of defendant, relying upon the rule of law which excuses the nonoccurrence of a condition precedent when the defendant himself hinders or prevents the fulfillment of that condition. Id. at 577. Although in Coastal Oil Co. the defendant promissor made an express misrepresentation, the nondisclosure of a fact known to one party but not to another is equivalent to a fraudulent assertion where the nondisclosing party knows that disclosure of the fact would correct a mistake of the other party as to a basic assumption on which that party is making the contract, or where nondisclosure amounts to a lack of good faith dealing on defendant's part. See Restatement (Second) of Contracts, § 161 (1982).
Here Summit agreed to lease the premises to Allstate subject only to the conditions set forth in the lease. Yet, the premises could not be used for the purpose for which they were being leased nor the condition precedent met unless the riparian claim of the State was resolved. Nonetheless, the existence of this claim was not disclosed to Allstate prior to execution of the lease, which Allstate claims is a breach of that lease.
Summary judgments are to be granted with extreme caution. On a motion for summary judgment the moving papers and pleadings are to be considered in a light most favorable to the party opposing the motion, all doubts being resolved against the movant. See Ruvolo v. American Cas. Co., 39 N.J. 490, 499 (1963). The summary procedure is no substitute for a plenary trial. See United Advertising Corp. v. Metuchen, 35 *327 N.J. 193, 196 (1961); Baer v. Sorbello, 177 N.J. Super. 182, 185 (App.Div. 1981), certif. den. 87 N.J. 388 (1981). The rule requires that the judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2. The standards of decision governing the grant or denial of a summary judgment emphasize that a party opposing a motion is not to be denied a trial unless the moving party sustains the burden of showing clearly the absence of a genuine issue of material fact. At the same time, the standards are to be applied with discriminating care so as not to defeat a summary judgment if the movant is justly entitled to one. Judson v. Peoples' Bank & Trust Co. of Westfield, 17 N.J. 67, 74 (1954).
It is clear that there are factual matters in dispute in this case, i.e., whether or not the existence of the State's riparian claim was disclosed to Allstate prior to the execution of the lease and whether the State's claim prevented Allstate from obtaining the required permits and approvals. Allstate contends that it was unaware of the riparian claim and consequently sustained damage by preparing to perform a contract which it claims was impossible to perform. They further contend that Summit knew of this impossibility before entering into the lease agreement.
On the other hand, Summit questions whether Allstate was unaware of the riparian claim. Summit further argues that there is no evidence to support Allstate's contention that the existence of the riparian claim made it impossible to obtain the required permits. As we previously noted however, Summit conceded in its brief filed in support of the motion for summary judgment that the lease agreement was impossible to perform due to the State's riparian claim and the inability to obtain all required government permits within the time prescribed in the lease. Yet Summit now argues in its appellate brief that *328 Allstate's contention of impossibility to obtain permits is belied by the fact that HMDC did approve a permit, although, because of the qualifications, that permit was not satisfactory to Summit. All of these questions are factual and require resolution before the principles of law can be properly applied.
Reversed and remanded. We do not retain jurisdiction.
NOTES
[1] The trial judge dismissed the second count for conspiracy because, after dismissal of the first count, "there is no underlying wrong to support a conspiracy count." Our reversal does not preclude reconsideration of the motion for summary judgment as to the second count in light of our decision. Although we reverse the dismissal as to both counts, we express no opinion as to the second count.
[2] This apparently was done in an effort to be certain that the summary judgment was a final judgment rather than an interlocutory order. See R. 2:5-6.
[3] "The pertinent provisions of the Shipping Act of 1916, referred to both in the contract upon which this suit is based and in the pleadings of plaintiff, provide in substance that no corporation shall be deemed a citizen of the United States unless the controlling interest is owned by citizens of the United States and unless its president and managing directors are citizens of the United States and unless the corporation is organized under the laws of the United States or of a state, territory, district or possession of the United States. U.S.C.A., Tit. 46, § 802." Coastal Oil Co. v. Eastern Tankways Seaways Corp., 29 N.J. Super. at 573.